No. 23-5685

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

TIMOTHY M. TURNER,

*Plaintiff-Appellant*,

v.

HELEN R. LONG, ET AL.,

*Defendants-Appellees*.

On Appeal from the United States District Court for the Western
District of Kentucky, No. 3:20-cv-00813
Before the Hon. Joseph H. McKinley, Jr.

### PLAINTIFF-APPELLANT'S OPENING BRIEF

Megha Ram\*
Brendan Bernicker
RODERICK & SOLANGE MACARTHUR
JUSTICE CENTER
501 H Street NE, Suite 275
Washington DC 20002
(202) 869-3434
megha.ram@macarthurjustice.org
brendan.bernicker@macarthurjustice.org

\*UCLA School of Law students
Michaela Firmage, Carson Horky,
Shireen Jalali-Yazdi, and Sylvia Lydon
contributed substantially to the
preparation of this brief.

*Counsel for Timothy M. Turner*

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiff-Appellant Timothy Turner requests oral argument because this civil rights case involves important issues of statutory interpretation and constitutional law. Oral argument will aid the Court by allowing Plaintiff-Appellant to explore the issues presented in his appeal and respond to any inquiries raised.

## DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST

Pursuant to Sixth Circuit Rule 26.1, Appellant Timothy M. Turner makes the following disclosure:

Is said party a subsidiary or affiliate of a publicly owned corporation? **No.**

Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? **No.**

Dated: November 13, 2023                                   */s/ Megha Ram*
                                                            Megha Ram

# TABLE OF CONTENTS

STATEMENT IN SUPPORT OF ORAL ARGUMENT ...........................................i

TABLE OF AUTHORITIES ...................................................................................iv

STATEMENT OF JURISDICTION.........................................................................1

INTRODUCTION ....................................................................................................1

STATEMENT OF ISSUES ......................................................................................3

STATEMENT OF THE CASE..................................................................................4

I.    Factual Background ........................................................................................4

      A. Mr. Turner was forced to wear moldy paper boxers stained with feces and urine for more than three weeks. ........................................................4

      B. Mr. Turner was told to wear paper boxers that were three sizes too small and promptly ripped when he put them on, exposing his buttocks and genitals to prison staff, prisoners, and security cameras. ........................7

      C. Mr. Turner was given clean boxers from his personal property................10

      D. Defendant Bare told Michael Carper and other prisoners that Mr. Turner was a confidential informant. ..........................................................10

      E. Mr. Turner was threatened, assaulted, and forced to seek protective custody. .............................................................................................................11

II.    Procedural History .......................................................................................12

SUMMARY OF ARGUMENT ..............................................................................14

STANDARD OF REVIEW ....................................................................................16

ARGUMENT ..........................................................................................................17

I.    The district court erred in granting summary judgment on Mr. Turner's Eighth Amendment conditions claim. ...............................................................17

II.    The district court erred in granting summary judgment on Mr. Turner's Fourth Amendment bodily privacy claim............................................................21

A.    Exposure need not be to the opposite sex; in any case, there was opposite-sex exposure here...........................................................................23

B.    Exposure need not be intentional; in any case, it was intentional here.   ...........................................................................................................25

C.    The proper inquiry requires analysis of whether the exposure was reasonably related to penological interests.....................................................28

III.    The district court erred in granting summary judgment on Mr. Turner's Eighth Amendment deliberate indifference claim. .....................................................31

A.    Mr. Turner presented competent summary judgment evidence that Defendant Bare identified him as a confidential informant. ..................32

B.    Accepting that Defendant Bare told other prisoners that Mr. Turner was a confidential informant, as required at summary judgment, he violated the Eighth Amendment. ...........................................................36

CONCLUSION ...............................................................................................43

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)

CERTIFICATE OF SERVICE

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Allah v. Al-Hafeez*,
    226 F.3d 247 (3rd Cir. 2000) ........................................................................19, 20

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..........................................................................................34

*Bartleson v. Parker*,
    No. 19-6027, 2021 WL 9544912 (6th Cir. May 19, 2021) ....................18, 19, 21

*Bell v. Wolfish*,
    441 U.S. 520 (1979)..........................................................................................23

*Briggs v. Potter*,
    463 F.3d 507 (6th Cir. 2006) ...........................................................................34

*Byrd v. Haas*,
    17 F.4th 692 (6th Cir. 2021) ............................................................................28

*C.f. Aerel, S.R.L. v. PCC Airfoils, LLC*,
    448 F.3d 899 (6th Cir. 2006) ...........................................................................35

*Calhoun v. Detella*,
    319 F.3d 936 (7th Cir. 2003) ...........................................................................20

*Comstock v. McCrary*,
    273 F.3d 693 (6th Cir. 2001) .....................................................................37, 40

*Cornwell v. Dahlberg*,
    963 F.2d 912 (6th Cir. 1992) ...........................................................................22

*Curry v. Scott*,
    249 F.3d 493 (6th Cir. 2001) ...........................................................................38

*Demis v. Sniezek*,
    558 F.3d 508 (6th Cir. 2009) ...........................................................................41

*El Bey v. Roop*,
    530 F.3d 407 (6th Cir. 2008) ...........................................................................33

*Farmer v. Brennan,*
    511 U.S. 825 (1994)........................................................................................*passim*

*Grand Traverse Band of Ottawa & Chippewa Indians v. Dir.,*
    *Michigan Dep't of Nat. Res.,*
    141 F.3d 635 (6th Cir. 1998) ...........................................................................16

*Helling v. McKinney,*
    509 U.S. 25 (1993)...........................................................................................38

*Hoever v. Marks,*
    993 F.3d 1353 (11th Cir. 2021) (en banc) .......................................................19

*Hutchins v. McDaniels,*
    512 F.3d 193 (5th Cir. 2007) ...........................................................................19

*Hutto v. Finney,*
    437 U.S. 678 (1978)..........................................................................................17

*Jones v. Lawry,*
    No. 2:19-CV-49, 2019 WL 2482361 (W.D. Mich. June 14, 2019).............25, 26

*Jones v. Potter,*
    488 F.3d 397 (6th Cir. 2007) ...........................................................................35

*Kuperman v. Wrenn,*
    645 F.3d 69 (1st Cir. 2011)...............................................................................19

*LaFountain v. Martin,*
    334 F. App'x 738 (6th Cir. 2009)...............................................................21, 37

*Leary v. Livingston Cnty.,*
    528 F.3d 438 (6th Cir. 2008) .....................................................................40, 41

*Lilla v. Comau Pico, Inc.,*
    No. 05-72518, 2007 WL 851636 (E.D. Mich. Mar. 21, 2007)....................34, 35

*Lucas v. Chalk,*
    785 F. App'x. 288 (6th Cir. 2019)....................................................................18

*Manwaring v. Martinez,*
    527 Fed. App'x 390 (6th Cir. 2013) .................................................................16

*McGowan v. Herbert,*
   No. 22-2033, 2023 WL 2945341 (6th Cir. Apr. 14, 2023)................................37

*Memphis Cmty. Sch. Dist. v. Stachura,*
   477 U.S. 299 (1986)........................................................................21

*Mills v. City of Barbourville,*
   389 F.3d 568 (6th Cir. 2004) .......................................................25, 26

*Oliver v. Keller,*
   289 F.3d 623 (9th Cir. 2002) .............................................................19

*Parrish v. Johnson,*
   800 F.2d 600 (6th Cir. 1986) .............................................................17

*Powers v. Hamilton Cnty. Pub. Def. Comm'n,*
   501 F.3d 592 (6th Cir. 2007) .............................................................26

*Reedy v. West,*
   988 F.3d 907 (6th Cir. 2021) .............................................................39

*Royal v. Kautzky,*
   375 F.3d 720 (8th Cir. 2004) .............................................................19

*Searles v. Van Bebber,*
   251 F.3d 869 (10th Cir. 2001) ...........................................................19

*Silverbug v. Haney,*
   No. 19-6273, 2020 WL 6580034 (6th Cir. Jul. 29, 2020) .................................41

*Small v. Brock,*
   963 F.3d 539 (6th Cir. 2020) .............................................................18

*Smith v. Wade,*
   461 U.S. 30 (1983)........................................................................20

*Stoudemire v. Michigan Dep't. of Corrs.,*
   705 F.3d 560 (6th Cir. 2013) ......................................................*passim*

*Sumpter v. Wayne Cnty.,*
   868 F.3d 473 (6th Cir. 2017) .........................................................24, 29

*Taylor v. Larson*,
   505 F. App'x 475 (6th Cir. 2012) ..............................................................17

*Thomas v. Hininger*,
   No. 15-3547, 2016 U.S. App. LEXIS 24188 (6th Cir. Feb. 25,
   2016) ............................................................................................................17

*Thomas v. Illinois*,
   697 F.3d 612 (7th Cir. 2012) .....................................................................19

*Thompson v. Carter*,
   284 F.3d 411 (2nd Cir. 2002) ....................................................................19

*Turner v. Safley*,
   482 U.S. 78 (1987)...............................................................14, 22, 23, 28

*United States v. Smotherman*,
   838 F.3d 736 (6th Cir. 2016) .......................................................................1

*Westmoreland v. Butler County, Kentucky*,
   29 F.4th 721 (6th Cir. 2022) ......................................................................37

*Wilcox v. Brown*,
   877 F.3d 161 (4th Cir. 2017) ................................................................19, 21

*Williams v. Browman*,
   981 F.2d 901 (6th Cir. 1992) ................................................................33, 34

*Williams v. City of Cleveland*,
   771 F.3d 945 (6th Cir. 2014) .....................................................................30

**Statutes**

Kentucky Revised Statutes, "Notarial Acts", KRS 423.310(1)(b) ..........................32

**Other Authorities**

"Affidavit", Black's Law Dictionary (11th ed. 2019) ............................................32

Fed. R. App. P. 4(a)(1)(A) ...........................................................................................1

Fed. R. Civ. P. 54(c)....................................................................................................21

Fed. R. Civ. P. 56(a).....................................................................................................16

Fed. R. Civ. P. 56(c)(4)................................................................................32

Fed. R. Evid. 201(b)(2) ..............................................................................41

Kentucky Corrections Policies and Procedures 9.18, "Informants"
    (Kentucky Dep't of Corrs. 2011),
    https://corrections.ky.gov/About/cpp/Documents/09/CPP%209.18.
    pdf (last accessed November 13, 2023).............................................41

## STATEMENT OF JURISDICTION

Plaintiff-Appellant Timothy Turner filed this action pursuant to 42 U.S.C. § 1983 in the United States District Court for the Western District of Kentucky. The District Court had jurisdiction over Mr. Turner's claims under 28 U.S.C. §§ 1331 and 1343. On June 29, 2023, the District Court entered summary judgment for Defendants. On July 18, 2023, Mr. Turner filed a timely notice of appeal. *See* Fed. R. App. P. 4(a)(1)(A).[1] This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## INTRODUCTION

While incarcerated, Timothy Turner spent 22 days in the same pair of rancid, disintegrating paper boxers. The boxers were stained with feces, urine, and mold, and had a foul odor. Mr. Turner pleaded daily with corrections officers to allow him to wear his own clean cloth boxers while his size in the paper boxers—XXXL—was backordered. But Defendant Officers Bert Bare, Benjamin Harlan, and Helen Long rejected this simple solution. Instead, Mr. Turner was left to live, sleep, and eat meals in the same pair of filthy, deteriorating paper boxers for more than three weeks.

---

[1] The Notice of Appeal was deposited in the facility mail system on July 18, 2023, and docketed on July 24, 2023. Notice of Appeal, R.42. PageID #476. Under the "prison mailbox rule . . . a *pro se* prisoner's notice of appeal is deemed 'filed at the time [the *pro se* prisoner] delivered it to the prison authorities for forwarding to the court clerk.'" *United States v. Smotherman*, 838 F.3d 736, 737 (6th Cir. 2016) (quoting *Houston v. Lack*, 487 U.S. 266, 276 (1988)).

After 22 days, at Defendants' insistence, Mr. Turner agreed to try wearing paper boxers that were three sizes too small. But as he predicted, the boxers ripped almost immediately, exposing his buttocks and genitals to prison staff, cameras, and other prisoners. As a result of this forced exposure, he was subjected to repeated sexual harassment by other prisoners. Even then, Defendants did not allow Mr. Turner to wear his personal cloth boxers. He was forced to remain in the torn paper boxers until the following day when a non-defendant officer saw the state they were in. That non-defendant officer promptly brought him clean cloth underwear, putting an end to weeks of unnecessary humiliation and suffering in a matter of minutes.

Just weeks after this ordeal, Defendant Bare told several prisoners that Mr. Turner was a confidential informant. These comments put Mr. Turner in immediate danger as other prisoners believed he was a "snitch." Other prisoners put a "hit" on Mr. Turner and one prisoner physically assaulted him—hitting him on the head with a lock. The assault left Mr. Turner with a wound on his ear and bleeding in his ear canal, which required medical attention. Fearing for his life and unable to safely return to general population, Mr. Turner remained in protective custody until he was eventually transferred to a new facility.

In granting summary judgment for Defendants on Mr. Turner's conditions-of-confinement, bodily privacy, and deliberate indifference claims, the district court disregarded both critical evidence and binding precedent. First, it determined that

2

Mr. Turner's Eighth Amendment conditions claim—based on the weeks he spent in rancid paper boxers—was barred by the Prison Litigation Reform Act ("PLRA") because it did not involve physical injury. But the physical injury requirement does not apply to demands for punitive or nominal damages, so granting summary judgment for Defendants on the entire claim was error. Second, in assessing Mr. Turner's Fourth Amendment bodily privacy claim, the district court followed an unpublished district court decision and imposed unsupported requirements on Mr. Turner. This Court should remand for the district court to apply the correct test, set out in controlling Supreme Court and Sixth Circuit caselaw. Finally, the district court overlooked crucial evidence that supports Mr. Turner's Eighth Amendment deliberate indifference claim against Defendant Bare for labeling Mr. Turner a confidential informant; properly considered, this evidence creates a genuine issue of material fact that can only be resolved at trial.

This Court should reverse and remand for further proceedings.

## STATEMENT OF ISSUES

1. Whether the district court erred in holding that Section 1997e(e) of the Prison Litigation Reform Act bars Mr. Turner's Eighth Amendment claim absent physical injury where binding precedent holds that prisoners need not show physical injury to recover nominal and punitive damages.

3

2.      Whether the district court erred in granting summary judgment to prison officials on Mr. Turner's Fourth Amendment bodily privacy claim where his disintegrating and torn boxers—which he was not permitted to cover with any clothing except an ill-fitting suicide smock—left him exposed to other prisoners, staff, and security cameras.

3.      Whether the district court erred in granting summary judgment to a prison official on Mr. Turner's Eighth Amendment deliberate indifference claim where the official labeled Mr. Turner a confidential informant and Mr. Turner was attacked as a result.

<div align="center">

**STATEMENT OF THE CASE**

</div>

**I.      Factual Background**

**A. Mr. Turner was forced to wear moldy paper boxers stained with feces and urine for more than three weeks.**

Mr. Turner's confinement in the Restrictive Housing Unit (RHU) at Luther Luckett Correctional Complex (LLCC) began on June 8, 2020. June 8 Detention Order, R.32-8, PageID #370. On June 26, LLCC ran out of paper boxers in Mr. Turner's size and he had to continue wearing the same pair of paper boxers he had been wearing the past two days. Verified Complaint, R.1, PageID #5; June 29 Boxers Grievance, R.1-1, PageID #16. By June 29, 2020, Mr. Turner had been wearing the same pair of paper boxers for five consecutive days. Verified Complaint, R.1, PageID #5; June 29 Boxers Grievance, R.1-1 PageID #16.

<div align="center">

4

</div>

After five days, the paper boxers were urine- and feces-stained, and had a "foul odor." Verified Complaint, R.1, PageID ##5, 11; June 29 Boxers Grievance, R.1-1, PageID #16. At that point, Mr. Turner told Defendants Long and Harlan about his soiled boxers and filed a grievance explaining that they were "nasty," and had "urine [and] feces[] stains." June 29 Boxers Grievance, R.1-1, PageID #16; Verified Complaint, R.1, PageID #5.[2] Defendants Long and Harlan denied his request for new boxers and informed Mr. Turner that the paper boxers in his size, XXXL, were backordered. Verified Complaint, R.1, PageID #5.

Mr. Turner could not simply remove the boxers because the only other item of clothing he was permitted to wear, per RHU policy, was an ill-fitting security smock that provided limited coverage. Verified Complaint, R.1, PageID #6; Policy Memorandum, R. 32-13, PageID #408. So, Mr. Turner proposed a simple solution: He "asked respectfully and repeatedly throughout the month" to be given a pair of cloth boxers from his personal property until paper boxers in his size became available. *Id.* at PageID #5; *see also* July 15 Boxers Grievance, R.1-1, PageID #20. Defendants Long and Harlan rejected this idea. Verified Complaint, R.1, PageID #5.

---

[2] Following the grievance is a rejection notice stating that the grievance was rejected because it was "filed more than five (5) days after the incident" and because it was "grieving on behalf of another inmate." Boxers Grievance Rejection Notice, R.1-1, PageID #17. This is perplexing as the "incident" was still ongoing when the grievance was filed and was clearly about an issue Mr. Turner was himself experiencing. June 29 Boxers Grievance, R.1-1, PageID #16.

Defendants now state that prison policy required all prisoners in the RHU to wear paper boxers. Motion for Summary Judgment, R.32-1, PageID #340; Gunter Affidavit, R.32-12, PageID #406. But the actual policy memorandum that Defendants invoke says nothing about paper boxers, explaining only that prisoners "will be issued a security blanket and security smock for RHU clothing and linen." Policy Memorandum, R.32-13, PageID #408. In any case, Defendant Harlan explained that officers were required to offer prisoners in RHU "clean, new, size-appropriate paper boxers 3-4 times a week." Harlan Affidavit, R.32-7, PageID #365. And Deputy Warden for Security Patricia Gunter specifically "authorized" prisoners who were "exceptionally large" to "wear their own personal cloth boxers until the larger sized paper boxers were restocked." Gunter Affidavit, R.32-12, PageID #406.

By July 15, 2020, Mr. Turner had not received clean underwear—paper or cloth—for over three weeks despite "begging and pleading daily for relief." Verified Complaint, R.1, PageID ##5, 11. After 22 days, his paper boxers "had mold in them, urine and feces stains," and were emitting an "awful foul odor." *Id*. at PageID #5. The boxers were in such an unsanitary condition that Mr. Turner's cellmate complained about being "in the small cell together" with Mr. Turner and his soiled boxers "due to the smell and health hazard it posed." *Id.* at PageID #11.

6

**B. Mr. Turner was told to wear paper boxers that were three sizes too small and promptly ripped when he put them on, exposing his buttocks and genitals to prison staff, prisoners, and security cameras.**

On the evening of July 15, 2020, Mr. Turner was told that his "only option" was to wear paper boxers that were three sizes too small. Verified Complaint, R.1, PageID #5 (emphasis in original) (explaining Defendant Long repeatedly insisted he wear size L boxers). He knew that wearing the too-small boxers would be like putting a "square peg in a round hole" and that it "could not be done." Turner Affidavit, R.33, PageID #446. Nevertheless, he tried to put them on. Verified Complaint, R.1, PageID #5. By that time, his paper boxers had been "falling apart" for weeks and "were destroyed." June 29 Boxers Grievance, R.1-1, PageID #16; Turner Affidavit, R.33, PageID #446 (explaining the boxers were "destroyed" because "paper falls apart when wet [] [w]hether from water, urine or feces"). Not only that, but Mr. Turner previously had over seven years of good conduct and four years of honor dorm, and did not want to be written up for failing to obey a direct order. Turner Affidavit, R.33, PageID #445; Verified Complaint, R.1, PageID #5.

But as Mr. Turner predicted, at 350 pounds, wearing a size L was "not even an option." Verified Complaint, R.1, PageID #5. The boxers were so small that he "could not pull them up all the way for fear of them busting apart." *Id.*; *see also* July 15 Boxers Grievance, R.1-1, PageID #20 (Mr. Turner "told staff [the boxers] would bust out on me"). Unable to pull the boxers all the way up, Mr. Turner

"embarrassingly walked down the hall to his room" while several men heckled him and made sexually explicit comments, including "Damn that ass is fat," and "Let me fuck that ass, Chop."[3] Verified Complaint, R.1, PageID #5.

When he arrived at his cell and sat on his bed, the too-small paper boxers immediately "came apart at the seam." *Id*. at PageID ##5-6; *see also* July 15 Boxers Grievance, R.1-1, PageID #20 (noting the boxers "were totally busted out in the rear" leaving his "butt completely exposed" to staff, prisoners, and cameras). Though the suicide smock was meant to cover prisoners "completely to the mid-thigh," Long Affidavit, R.32-6, PageID #361, the "Velcro was not strong enough" to hold the smock closed on a 350-pound man, Turner Affidavit, R.33, PageID #446. As a result, the smock did not always cover Mr. Turner's buttocks and genitals, especially at night when it would "ride up" as Mr. Turner moved around in his bed, "exposing [his] nakedness." *Id*.; *see also* Verified Complaint, R. 1, PageID #6. Mr. Turner "was made to wear [the torn boxers] through the night with his buttocks showing naked," in full view of his cellmate and a security camera "for others to view." Verified Complaint, R.1, PageID #6.

On the morning of July 16, 2020, Mr. Turner told Defendant Harlan that his boxers had "completely ripped out" and showed him his bare buttocks to illustrate

---

[3] "Chop" is Mr. Turner's nickname. Verified Complaint, R.1, PageID #5.

the problem. *Id.* He again begged to be allowed to wear his cloth boxers. *Id.* All Defendant Harlan said was "Nice." *Id.*

Mr. Turner then went to Recreation—his only opportunity to get fresh air and exercise after spending 23 hours a day on weekdays and 24 hours a day on weekends locked in a small cell with another prisoner. *Id.* at PageID ##6, 9. While exercising at Recreation, Mr. Turner became "hot and sweaty" and took off his suicide smock, *Id.* at PageID #6, which in any event "would not stay closed because the Velcro was not strong enough," Turner Affidavit, R.33, PageID #446. Because his paper boxers were "completely ripped," his "bare buttocks and genitals" were exposed to everyone at Recreation and to the "multiple" security cameras in the Recreation area. Verified Complaint, R.1, PageID #6. The other prisoners started heckling Mr. Turner with "l[ewd] and sexual[ly] motivated statements" like "Damn, I wish I was your cellmate" and "I'd be fucking that ass, Chop." *Id.* Defendant Bare heard these comments. *Id.* When Mr. Turner asked for help filing a Prison Rape Elimination Act (PREA) request, Defendant Bare said that the situation was "not a P.R.E.A.," and added, "Looks like your ass is out of luck!" *Id.* The other prisoners then laughed and made additional "obscene statements and comments," subjecting Mr. Turner to another round of sexual harassment. *Id.*

9

**C. Mr. Turner was given clean boxers from his personal property.**

The loud heckling brought non-defendant Captain Sarah Crawford to the scene. *Id.* at PageID ##6-7. Mr. Turner asked her to "please help" and to "take him back to his cell!" *Id*. at PageID #7. He "showed Cpt. Crawford his buttocks" through his ripped boxers and pleaded "through tear[s]" to be given a cloth pair from his personal property. *Id*. Captain Crawford left the area and came back in 15 minutes with a clean pair of cloth boxers from Mr. Turner's personal property—the very solution that Mr. Turner had suggested all along. *Id*. By that time, Mr. Turner had been without a clean or appropriately fitting pair of boxers for more than three weeks. *Id*. at PageID #5-7.

**D. Defendant Bare told Michael Carper and other prisoners that Mr. Turner was a confidential informant.**

On August 3, 2020, just two-and-a-half weeks after receiving clean boxers, Mr. Turner faced a second serious problem. At that time, Mr. Turner was still in the RHU where he had been since June 8 because he and another prisoner, Michael Carper, had been accused of dissuading other prisoners from constructing COVID no-contact visitation booths. Disciplinary Report Form, R.32-3, PageID #351.[4] On

---

[4] Mr. Turner was sentenced to 15 days in disciplinary segregation on this charge. Disciplinary Report Form, R.32-3, PageID ##351-52. However, he ultimately spent a total of 68 days in the RHU. June 8 Detention Order, R.32-8, PageID #370; Harlan Affidavit, R.32-7, PageID #365 (noting Mr. Turner held in the RHU from June 8 to August 14).

August 3, Mr. Turner heard Defendant Bare tell Carper, in earshot of other prisoners, that he "never had any intentions of putting [Carper] in RHU until he talked to [Mr. Turner]." Grievance Regarding Bare Comments, R.1-1, PageID #22. Defendant Bare labeled Mr. Turner a "confidential informant," Verified Complaint, R.1., PageID #10, and told Carper that Mr. Turner was the "reason for [Carper] being in the RHU." Grievance Regarding Bare Comments, R.1-1, PageID #22; *see also* Turner Affidavit, R.33, PageID #445; Letters to Robey and Bare, R.1-1, PageID ##23-24.

### E. Mr. Turner was threatened, assaulted, and forced to seek protective custody.

Mr. Turner became "severely depressed" and "scared" as a result of Defendant Bare's comments. Verified Complaint, R.1, PageID #10. Other prisoners labeled him a "jailhouse snitch" and a "rat," and a "hit" was put on him. Letters to Robey and Bare, R.1-1, PageID ##23, 24; Turner Affidavit, R.33, PageID #445. These were not empty threats. Less than two weeks after Mr. Turner was released from the RHU and put back into general population, another prisoner assaulted him, striking him in the head with a lock. Incident Report Summary, R.23-7, PageID #143; Protective Custody Form, R.23-6, PageID #141. The attack caused an "abrasion to the front of [Mr. Turner's] right ear" and "bleeding" in his ear canal. Incident Report Summary, R.23-7, PageID #144. He required medical attention and nursing staff "cleaned the wound" and "bandage[d]" it. *Id*.

11

After the attack, Mr. Turner was sent back to the RHU. Harlan Affidavit, R.32-7 at PageID #365. Worried that further attacks were coming, Mr. Turner sought help from Warden Amy Robey, requesting transfer to another institution "away from Lt. Bare and the inmates housed here" or for the matter to be "resolved in any way possible." Letter to Robey, R.1-1, PageID #23. Mr. Turner also requested protective custody and remained in the RHU pending the outcome of a protective custody hearing. September 1 Detention Order, R.32-8, PageID #378; Turner Affidavit, R.33, PageID #445. When the protective custody committee recommended that Mr. Turner return to general population on September 15, 2020, Mr. Turner sought to appeal the recommendation, explaining, "If I go back to the yard, they are going to kill me . . . They already threatened to stab me and I am in fear for my life. . . . There is a ticket on my head." Protective Custody Form, R.23-6, PageID #140. Because of the threats to his life, and because he had already been assaulted, Mr. Turner refused to go back to general population pending transfer. Harlan Affidavit, R.32-7, PageID #365; September 2020-March 2021 Detention Orders, R.32-8, PageID ##378-93. Mr. Turner is now at the Little Sandy Correctional Complex. Notice of Change of Address, R.36, PageID #460.

## II.     Procedural History

Mr. Turned filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 on December 4, 2020, in the Western District of Kentucky. Verified Complaint, R.1.

As relevant on appeal, he alleged that (1) Defendants Bare, Harlan, and Long violated the Eighth Amendment by forcing him to wear soiled, moldy, and disintegrating paper boxers for 22 consecutive days;[5] (2) Defendants Bare, Harlan, and Long violated the Fourth Amendment by forcing Mr. Turner to expose himself to prison staff, other prisoners, and the cameras inside prison facilities; and (3) Defendant Bare violated the Eighth Amendment by being deliberately indifferent to Mr. Turner's safety when he told other prisoners that Mr. Turner was a confidential informant. *Id*.

Defendants filed their operative Motion for Summary Judgment on September 22, 2022. *See* R.32. On October 21, 2022, Mr. Turner, still proceeding *pro se*, filed his operative response opposing summary judgment. *See* R.33. Defendants filed their operative reply on November 3, 2022. *See* R.34. The district court granted Defendants' motion for summary judgment on June 29, 2023. *See* R.40. Mr. Turner filed a timely notice of appeal on July 18, 2023. *See* R.42. Undersigned counsel began representing Mr. Turner *pro bono* on appeal.

---

[5] Mr. Turner also brought a second Eighth Amendment conditions-of-confinement claim concerning other aspects of his confinement in the RHU. Verified Complaint, R.1, PageID ##8-9. Both conditions-of-confinement claims survived screening. *See* R.7, Screening Opinion, PageID #61. And both were briefed at summary judgment. *See* R.32-1, Motion for Summary Judgment, PageID ##331-341. In its summary judgment opinion, however, the district court combined its analysis of these two conditions claims and granted summary judgment on them for the same reason. Opinion, R.40, PageID #472-73. Mr. Turner is no longer pursuing the second conditions claim.

13

## SUMMARY OF ARGUMENT

**I**. Mr. Turner brought an Eighth Amendment claim based on the weeks he was forced to spend in rancid paper boxers. Instead of analyzing the constitutional violation, the district court reasoned that the entire claim was barred by Section 1997e(e) of the Prison Litigation Reform Act ("PLRA") because it did not involve a physical injury. Opinion, R.40, PageID #472-73. But it is settled law that the physical injury requirement does not apply to demands for punitive or nominal damages. This Court and nearly all of its sister circuits have said so. Because Mr. Turner seeks both punitive and nominal damages, the district court erred in granting summary judgment on this claim. This Court should reverse and remand for consideration of the constitutional violation.

**II**. The district court erred again in granting summary judgment on the Fourth Amendment bodily privacy claim. Mr. Turner spent weeks in wet paper boxers that were falling apart, followed by a day in torn paper boxers, without any other clothing to cover himself except an ill-fitting suicide smock. As a result, he was exposed to other prisoners, staff, and security cameras. The proper Fourth Amendment analysis requires applying the test set forth in *Turner v. Safley*, 482 U.S. 78 (1987), namely, whether the forced exposure was reasonably related to legitimate penological interests. In conducting this inquiry, this Court proceeds in three-steps: first, by

14

assessing the degree of the invasion; second, by assessing the need for the invasion; and third, by weighing the degree of the invasion against the need.

Instead of conducting this analysis, the district court reasoned that summary judgment was warranted because Mr. Turner was not exposed to someone of the opposite sex and his exposure was accidental. Opinion, R.40, PageID #473. This is wrong on several points. First, Sixth Circuit caselaw does not require opposite-sex or intentional exposure for bodily privacy claims. Second, the exposure here *was* to people of the opposite-sex and *was* intentional. This Court should reverse and remand so the district court can apply the proper three-part test.

**III**. Finally, the district court erred a third time in granting summary judgment on the Eighth Amendment deliberate indifference claim premised on Defendant Bare's dangerous comments. The court determined that Mr. Turner "did not proffer admissible evidence that the alleged conversation between Bare and Carper happened." Opinion, R.40, PageID #470. It based this determination on the mistaken understanding that Mr. Turner only heard about the conversation secondhand, rather than directly. *Id.* But that's wrong. Mr. Turner heard the conversation himself and offered two pieces of admissible evidence.

First, he said in his Affidavit that he personally heard Defendant Bare tell other prisoners that he was a confidential informant. The district court relied on this Affidavit in its decision, but overlooked the crucial sentence where Mr. Turner

15

explained he was present for the conversation. Second, it is a reasonable inference from the Verified Complaint that Mr. Turner personally heard Defendant Bare's comments, and the district court violated established summary judgment principles in drawing the opposite inference.

Accordingly, the district court was bound to accept as fact that Defendant Bare told other prisoners that Mr. Turner was a confidential informant. Moreover, Defendant Bare acknowledged that identifying a prisoner as a confidential informant would subject that prisoner to violence. And, in fact, Mr. Turner was assaulted. Together, these facts show that Defendant Bare knowingly placed Mr. Turner at a substantial risk of serious bodily harm or death, and the claim should thus proceed to trial.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo* and its findings of fact for clear error. *Grand Traverse Band of Ottawa & Chippewa Indians v. Dir., Michigan Dep't of Nat. Res.*, 141 F.3d 635, 638 (6th Cir. 1998). Summary judgement is appropriate only where, construing all facts and drawing all reasonable inferences in favor of the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgement as a matter of law. *Manwaring v. Martinez*, 527 Fed. App'x 390, 393 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a).

16

## ARGUMENT

**I.    The district court erred in granting summary judgment on Mr. Turner's Eighth Amendment conditions claim.**

"[T]he Eighth Amendment protects prisoners from being . . . denied the basic elements of hygiene." *Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986) (quotation omitted). Human waste is particularly offensive and being forced to live in proximity to fecal matter and urine can establish a constitutional violation. *See, e.g.*, *Taylor v. Larson*, 505 F. App'x 475, 477 (6th Cir. 2012) (holding three-day proximity to fecal matter stated Eighth Amendment claim); *Thomas v. Hininger*, No. 15-3547, 2016 U.S. App. LEXIS 24188 at *8-9 (6th Cir. Feb. 25, 2016) (holding that "seven nights on a mattress on the floor" just feet away from where a toilet "continually splashed on the floor" made out Eighth Amendment claim). The timeframe matters, too: poor sanitary conditions "might be tolerable for a few days and intolerably cruel for weeks." *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978). Here, Mr. Turner was compelled to wear "the same nasty, urine and feces stained and molded paper boxers" for over three weeks. Verified Complaint, R.1, PageID #8. He lived, slept, and ate meals in these filthy boxers despite "begging and pleading" for clean cloth boxers. *Id*. at PageID #5. His boxers were so unsanitary, in fact, that his cellmate complained about "the smell and health hazard it posed." *Id*. at PageID #11.

17

Instead of addressing the merits of this claim, the district court found that the absence of physical injury barred Mr. Turner's claim under Section 1997e(e) of the PLRA, which prohibits prisoners from bringing suit "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See* Opinion, R.40, PageID #472–73. But this Court—like nearly all of its sister circuits—has squarely held that the physical injury requirement does not apply to demands for punitive or nominal damages.

This Court clearly set out that rule in *Small v. Brock*, 963 F.3d 539 (6th Cir. 2020). There, as here, the district court held that the plaintiff's action was barred by Section 1997e(e) because he did not allege a physical injury. *Id*. at 543. This Court reversed, holding that the plaintiff "[sought] more than compensatory damages" and so "may continue to pursue his action based on the requests for non-compensatory relief." *Id*. It determined that his claims for nominal and punitive damages must be allowed to proceed. *Id*. at 543, 544 n.3; *see also Lucas v. Chalk*, 785 F. App'x. 288, 292 (6th Cir. 2019) (holding that recovery of punitive and nominal damages for Eighth Amendment claim absent physical injury is "not prohibited by the PLRA").

The district court in this case relied on *Bartleson v. Parker* to reach a contrary conclusion, but even that decision holds that punitive and nominal damages are available for Eighth Amendment claims absent physical injury. No. 19-6027, 2021 WL 9544912, at *2 (6th Cir. May 19, 2021). The district court quoted *Bartleson* for

18

the proposition that "[t]he Sixth Circuit has 'repeatedly applied § 1997e(e) to bar Eighth Amendment claims for mental or emotional harm in the absence of physical injury.'" Opinion, R.40, PageID #473 (quoting *Bartleson*, 2021 WL 9544912, at *2). What the district court missed, however, was this Court's qualification just two sentences later explaining that Section 1997e(e) "does not necessarily bar [plaintiff's] complaint" because he "may be able to recover nominal or punitive damages." *Bartleson*, 2021 WL 9544912, at *2.

Nearly every other circuit agrees that a "prisoner can still obtain . . . nominal damages[] and punitive damages" absent a physical injury. *Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012) (internal quotation marks and citation omitted); *see also Kuperman v. Wrenn*, 645 F.3d 69, 73 n.5 (1st Cir. 2011) (punitive and nominal damages); *Thompson v. Carter*, 284 F.3d 411, 416 (2nd Cir. 2002) (same); *Allah v. Al-Hafeez*, 226 F.3d 247, 251-52 (3rd Cir. 2000) (same); *Hutchins v. McDaniels*, 512 F.3d 193, 197-98 (5th Cir. 2007) (same); *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004) (same); *Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002) (same); *Searles v. Van Bebber*, 251 F.3d 869, 878, 880-81 (10th Cir. 2001) (same); *Hoever v. Marks*, 993 F.3d 1353, 1356, 1361 (11th Cir. 2021) (en banc) (same); *Wilcox v. Brown*, 877 F.3d 161, 169-70 (4th Cir. 2017) (nominal damages).

Here, Mr. Turner requested punitive damages. Verified Complaint, R.1, PageID #14. Accordingly, overwhelming authority requires reversing the district

19

court. And that authority makes good sense, as allowing punitive damages under Section 1997e(e) achieves the forward-looking purpose of both Section 1983 and punitive damages—the "deterrence of future egregious conduct." *Smith v. Wade*, 461 U.S. 30, 49 (1983). A prisoner seeking punitive damages does not seek redress for any "mental or emotional injury" as prohibited by Section 1997e(e), but rather to punish defendants and deter future misconduct. *Allah*, 226 F.3d at 252. If the district court's contrary reading of Section 1997e(e) were correct, it "would give prison officials free reign to maliciously and sadistically inflict psychological torture on prisoners, so long as they take care not to inflict any physical injury in the process." *Calhoun v. Detella*, 319 F.3d 936, 940 (7th Cir. 2003). Here, Defendants refused Mr. Turner a reasonable alternative to living in moldy paper boxers stained with urine and feces for more than three weeks even though a non-defendant prison official provided him clean cloth boxers just 15 minutes after learning about the situation. Verified Complaint, R.1, PageID #5, 7. This is just the type of "egregious conduct" motivated by "callous indifference" that punitive damages are meant to address. *Smith*, 461 U.S. at 49, 56.

In addition to his explicit request for punitive damages, Mr. Turner also sought "damages in the amount of $ to be determined by jury trial." Verified Complaint, R.1, PageID #14. This request in his *pro se* complaint should be liberally construed to include nominal damages. *See Allah*, 226 F.3d at 251 (construing complaint to

20

request nominal damages even though plaintiff did "not expressly" seek them); *Wilcox*, 877 F.3d at 169 (construing request for "damages generally" as "encompass[ing] a request for nominal damages"); Fed. R. Civ. P. 54(c) (providing that every final judgment other than a default judgement "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"). As with punitive damages, there is good reason to allow recovery of nominal damages under Section 1997e(e), because nominal damages "are the appropriate means of vindicating rights whose deprivation have not caused actual, provable injury" *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 n.11 (1986).

This Court should reverse the district court's erroneous holding on Section 1997e(e) and remand for it to address Mr. Turner's Eighth Amendment conditions claim in the first instance. *See Bartleson*, 2021 WL 9544912, at *2 (vacating and remanding for further proceedings after determining Section 1997e(e) did not bar plaintiff from recovering nominal or punitive damages); *LaFountain v. Martin*, 334 F. App'x 738, 742 (6th Cir. 2009) (vacating and remanding "for further proceedings on the merits" after resolving PLRA issue).

## II.    The district court erred in granting summary judgment on Mr. Turner's Fourth Amendment bodily privacy claim.

The district court granted Defendants summary judgment on Mr. Turner's Fourth Amendment bodily privacy claim without conducting the requisite analysis.

Instead of applying binding precedent, the district court relied in large part on a district court decision to conclude that the right to bodily privacy is not violated in same-sex or accidental exposures. That is wrong on the law. Even if it were correct, however, the exposure in this case was neither limited to people of the same-sex nor accidental. This Court should reverse and remand for the district court to conduct the proper analysis.

In *Turner v. Safley*, the Supreme Court held that a prison regulation that "impinges on inmates' constitutional rights" is valid only if it is "reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987). The *Turner* standard applies to prisoners' Fourth Amendment bodily privacy claims regardless of whether the claims stem from an official prison regulation, unwritten prison policies, or discretionary conduct by corrections officers. *Cornwell v. Dahlberg*, 963 F.2d 912, 916-17 (6th Cir. 1992) (remanding for new trial on Fourth Amendment bodily privacy claim because district court failed to instruct jury on *Turner* standard); *Stoudemire v. Michigan Dep't. of Corrs.*, 705 F.3d 560, 572 (6th Cir. 2013) (affirming denial of summary judgment to officer on Fourth Amendment bodily privacy claim arising out of discretionary strip search).

In applying *Turner* to claims that correctional staff invaded an incarcerated plaintiff's bodily privacy, courts in this circuit proceed in three steps. *Stoudemire*, 705 F.3d at 571-72. First, they assess the degree of the invasion by examining its

22

scope, manner, and location. *Id*; *see also Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Second, they evaluate the need for the invasion. *Stoudemire*, 705 F.3d at 572; *see also Turner*, 482 U.S. at 89. Third, they determine whether the exposure "was reasonably related to legitimate penological interests by weighing the need against the invasion." *Stoudemire*, 705 F.3d at 572; *see also Turner*, 482 U.S. at 89-90. In doing this analysis, courts may consider the existence of alternative means for prisoners to exercise their constitutional rights; the impact that accommodating the constitutional rights may have on guards, other prisoners, and prison resources; and the absence of ready alternatives. *Turner*, 482 U.S. at 89-90.

The district court failed to apply this test. Instead, it effectively held that Mr. Turner's bodily privacy claim had to meet two requirements: that the exposure be (a) to someone of the opposite sex and (b) intentional rather than accidental. *See* Opinion, R.40, PageID ##473-74. These requirements do not exist in Sixth Circuit caselaw and, even if they did, they are satisfied here. This Court should reverse and remand for the district court to conduct the proper three-part test.

## A. Exposure need not be to the opposite sex; in any case, there was opposite-sex exposure here.

The district court repeatedly framed the Fourth Amendment right to bodily privacy in terms of freedom from exposure to members of the opposite sex. Opinion, R.40, PageID ##473-74. But exposure to members of the same sex can also violate

23

the Fourth Amendment and, in any case, Mr. Turner was exposed to both male and female correctional staff.

This Court has made clear that same-sex exposure can violate an incarcerated person's right to bodily privacy. In *Stoudemire*, for example, this Court denied a female correctional officer qualified immunity for strip-searching a female plaintiff in view of other female prisoners. 705 F.3d at 575. It explained that the defendant was "mistaken in suggesting that the gender of the parties involved is wholly dispositive of the constitutional question" because it is "just one fact for the court to consider." *Id.*; *see also Sumpter v. Wayne Cnty.*, 868 F.3d 473, 483 (6th Cir. 2017) (finding same-sex exposure of female detainee during strip-search constituted a "significant intrusion into her bodily privacy" where search was conducted in front of other female detainees).

Even if there were an opposite sex requirement, it would not matter here because Mr. Turner was directly exposed to at least two female correctional staff: Defendant Long and non-defendant Captain Crawford. Verified Complaint, R.1, PageID ##5-7; Turner Affidavit, R.33, PageID ##445-46. He was also exposed to cameras in his cell and at recreation; because the prison has female correctional staff, it is reasonable to infer they had access to these camera feeds and recordings. Verified Complaint, R.1, PageID ##5-7 (describing exposure to cameras); Protective Custody Form, R.23-6, PageID #139 (describing recording from one camera).

24

**B. Exposure need not be intentional; in any case, it was intentional here.**

Next, the district court concluded that Defendants did not violate Mr. Turner's Fourth Amendment right to bodily privacy because the exposure "was accidental," rather than "forced." Order, R.40, PageID #474. There is no rule that accidental exposures cannot violate the Fourth Amendment and, even if there were such a rule, Mr. Turner's exposure was not accidental.

The district court cited an unpublished district court decision for the proposition that an "accidental" exposure "is not a constitutional violation." Opinion, R.40, PageID #473 (citing *Jones v. Lawry*, No. 2:19-CV-49, 2019 WL 2482361, at *7 (W.D. Mich. June 14, 2019)). But that line from *Jones* reflects a misunderstanding of this Court's decision in *Mills v. City of Barbourville*, 389 F.3d 568 (6th Cir. 2004). In *Mills*, a woman who had been arrested on a narcotics charge was forced to remove her shirt and bra so female officers could search for contraband. 389 F.3d at 574. During the search, a male officer walked by and happened to see her. *Id*. After considering the nature of the intrusion and the need for the search, the *Mills* Court concluded that the search was constitutional notwithstanding the inadvertent additional exposure. *Id*. at 578-80.

*Jones* misinterpreted *Mills* to say that the "accidental viewing of a prisoner's naked body by a prison guard of the opposite sex is not a constitutional violation." 2019 WL 2482361, at *7. But, crucially, the accidental nature of the exposure in

*Mills* was not some threshold issue; it was only one of several factors the Court considered. First, the exposure in *Mills* followed from a legitimate search that was reasonably related to a valid penological interest (finding contraband). *Mills*, 389 F.3d at 578. In Mr. Turner's case, the district court said nothing at all about penological interest. Second, the *Mills* Court emphasized that the search was narrowed in scope to offer some protection for the plaintiff's privacy: the plaintiff did not have to take off her pants or her entire bra and there was no other location where the search could have been performed more privately. *Id.* at 574, 579. In Mr. Turner's case, no Defendant took steps to mitigate his exposure. Put simply, the district court in *Jones* incorrectly suggested that *Mills* made accidental exposures *per se* constitutional, and the district court here erroneously followed that one-sentence assertion.

Even if accidental exposures could never violate the Fourth Amendment, Mr. Turner's exposures were not accidental. Rather, the exposures were the entirely foreseeable, if not inevitable, consequence of Defendants' conduct. *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 609 (6th Cir. 2007) (explaining that Section 1983 claims are "read against the background . . . that makes a man responsible for the natural consequences of his actions" and question is "whether it was reasonably foreseeable that the complained of harm would befall the § 1983

26

plaintiff as a result of the defendant's conduct") (internal quotation marks and citation omitted).

Defendants Long and Harlan knew that Mr. Turner's boxers were "falling apart" as early as June 29, 2020 and were reminded daily of their continuing deterioration. June 29 Boxers Grievance, R.1-1, PageID #16; Verified Complaint, R.1, PageID #5; *see also* Harlan Affidavit, 32-7, PageID #366 (noting that Mr. Turner complained of "tearing" boxers on or before July 1 and noting that Defendant Long then checked for larger boxers on that date). As Mr. Turner explained, "paper falls apart when wet," and so after several days of wearing the same paper boxers, they became "understandably destroyed." Turner Affidavit, R.33, PageID #446. Because Mr. Turner's suicide smock did not close properly and often "[rode] up," his disintegrating paper boxers simply could not give him sufficient coverage. *Id.*

Eventually, Mr. Turner was ordered to wear boxers so small that he "could not pull them up all the way" and that immediately ripped at the seam once he sat down. Verified Complaint, R.1, PageID ##5-6. The rip exposed Mr. Turner to his cellmate and to the cameras in his cell, such that he was "looked at while nude." *Id.* at PageID #7. Mr. Turner alerted Defendant Harlan to the issue the next morning by showing him his "bare buttocks," but instead of preventing foreseeable future exposures by granting Mr. Turner's request to wear his personal cloth boxers, Defendant Harlan denied the request and only replied, "Nice." *Id.* at PageID #6.

27

When the inevitable result of Defendants' knowing inaction came to fruition and Mr. Turner's buttocks and genitals were exposed to everyone at Recreation, Verified Complaint, R.1, PageID #6, neither that exposure nor any of the preceding exposures were accidental.

By forcing Mr. Turner to wear soiled, disintegrating boxers that were falling apart, and then too-small boxers that promptly ripped, the Defendants forced him to expose himself. Turner Affidavit, R.33, PageID #446; Verified Complaint, R.1, PageID #6.

### C. The proper inquiry requires analysis of whether the exposure was reasonably related to penological interests.

As a Court "of review, not of first view," this Court should remand for the district court to conduct the proper *Turner* analysis in the first instance. *Byrd v. Haas*, 17 F.4th 692, 697, 699 n.5, 700 (6th Cir. 2021) (reversing grant of summary judgment where district court's "framing [wa]s wrong" and remanding for district court to do correct *Turner* analysis). Under that analysis, Mr. Turner would prevail.

The correct *Turner* analysis would proceed in three steps. First, the district court would assess the degree of the privacy invasion. *Stoudemire*, 705 F.3d at 572. Mr. Turner's paper boxers began "falling apart" by June 29, and he was not given new boxers until July 15, meaning his disintegrating boxers left him exposed for weeks. June 29 Boxers Grievance, R.1-1, PageID #16; Verified Complaint, R.1, PageID #5. And when he was given new paper boxers on July 15, they "completely

28

ripped," exposing his "bare buttocks." Verified Complaint, R.1, PageID ##5-6. During this ordeal, he had nothing but a suicide smock with which to cover himself—a smock that "would not stay closed because the Velcro was not strong enough." Turner Affidavit, R.33, PageID #446. This weeks-long exposure is "especially intrusive" because it involved exposure to "other inmates" and because Defendants Harlan and Bare taunted Mr. Turner with "rude comments." *Sumpter*, 868 F.3d at 483.

Second, the district court would assess the need for the exposure. *Stoudemire*, 705 F.3d at 572. Below, Defendants offered a single rationale: that a prison policy motivated by safety concerns required all prisoners in the RHU to wear paper boxers. Motion for Summary Judgment, R.32-1, PageID #340; Gunter Affidavit, R.32-12, PageID #406. But the evidence shows otherwise. Tellingly, Deputy Warden for Security Patricia Gunter "authorized" prisoners to "wear their own personal cloth boxers." Gunter Affidavit, R.32-12, PageID #406. And it took Captain Crawford just 15 minutes to give Mr. Turner his cloth boxers after seeing the state of his torn paper boxers. Verified Complaint, R.1, PageID #7; *see also* Crawford Affidavit, R.32-10, PageID #402. Clearly, then, there was no need to keep Mr. Turner in disintegrating and torn paper boxers over the preceding weeks. And nothing in the policy memorandum that Defendants point to requires it. *See* Policy Memorandum, R.32-

29

13, PageID #408 (requiring security blanket and security smock, but not mentioning paper boxers).

Finally, the district court would assess whether the exposure was reasonably related to penological interests by weighing the degree of the invasion against the need for it. *Stoudemire*, 705 F.3d at 572. Here, the invasive, weeks-long exposure would be weighed against the non-existent need for it, and the district court would have to conclude that the invasion was not reasonably related to any legitimate penological interest. The fact that prison officials ultimately approved and implemented the "obvious, easy alternative[]"—providing Mr. Turner with cloth boxers—only strengthens that conclusion. *Williams v. City of Cleveland*, 771 F.3d 945, 954 (6th Cir. 2014).

\* \* \*

Instead of applying the proper three-part test for bodily privacy claims, the district court imposed two requirements unsupported by the caselaw. And while Mr. Turner satisfies these two requirements, he is entitled to have his constitutional claim assessed under the correct test. This Court should therefore remand for the district court to perform the correct analysis. Under that test, Mr. Turner is likely to succeed because Defendants' refusal to provide Mr. Turner with boxers that properly concealed his private parts for weeks was not reasonably related to any legitimate penological interests.

30

**III.   The district court erred in granting summary judgment on Mr. Turner's Eighth Amendment deliberate indifference claim.**

Defendant Bare knowingly placed Mr. Turner at a substantial risk of serious harm by telling other prisoners that Mr. Turner was a confidential informant. Verified Complaint, R.1, PageID #10. This risk came to pass when other prisoners assaulted Mr. Turner because of Defendant Bare's comments. *Id*. The district court nevertheless granted summary judgment to Defendant Bare on this paradigmatic deliberate indifference claim, reasoning that Mr. Turner "did not proffer admissible evidence" that Defendant Bare had told others he was a confidential informant. Opinion, R.40, PageID #470. It based this determination on the mistaken understanding that Mr. Turner only heard about Defendant Bare's comments secondhand, rather than directly. *Id.*

But as Mr. Turner explained in his Affidavit, he personally heard Defendant Bare tell Carper, in the presence of other prisoners, that Mr. Turner was a confidential informant. And his Verified Complaint constitutes additional admissible evidence of that fact. In light of this evidence, the district court should have found that a genuine dispute of material fact precluded summary judgment on Mr. Turner's deliberate indifference claim. This Court should now reverse and remand for trial or, at minimum, for the district court to properly consider Mr. Turner's evidence in deciding his deliberate indifference claim.

31

**A. Mr. Turner presented competent summary judgment evidence that Defendant Bare identified him as a confidential informant.**

*1. Mr. Turner's Affidavit explicitly states that he personally heard Defendant Bare's statements.*

Mr. Turner's Affidavit plainly states that Defendant Bare placed him "in harm[']s way by making remarks to an inmate, *in the presence of Plaintiff* and other inmates" that Mr. Turner was a confidential informant. Turner Affidavit, R.33, PageID #445 (emphasis added). The district court seemingly overlooked this crucial statement. *See* Opinion, R.40, PageID #471. Because affidavits "made on personal knowledge" are valid evidence for opposing summary judgment, Fed. R. Civ. P. 56(c)(4), the unambiguous statement in the Affidavit that Mr. Turner was personally present for Defendant Bare's comments ends the inquiry: Mr. Turner *did* proffer admissible evidence of Defendant Bare's comments.[6]

---

[6] Mr. Turner's response to Defendants' motion for summary judgment is "[a] voluntary declaration of facts written down and sworn to . . . before an officer authorized to administer oaths," which is the definition of an affidavit. Black's Law Dictionary (11th ed. 2019); *see also* KRS 423.310(1)(b) (a notary may "[a]dminister oaths and affirmations"); Turner Affidavit, R.33, PageID ##446-47 ("Subscribed, *sworn*, acknowledged to be true and correct," followed by the signature, seal, and identification number of a Kentucky notary) (emphasis added). Below, Defendant Bare advanced various arguments that this Affidavit was not valid. Summary Judgment Reply, R.34, PageID ##450-52. But the district court necessarily rejected those arguments by treating the document as evidence in its summary judgment decision. Opinion, R.40, PageID #471 (citing Turner Affidavit, R.33, PageID #445). In any event, the record does not support Defendant Bare's challenges to the Affidavit.

32

Not only did the district court overlook the most crucial sentence, but it went on to misconstrue another portion of the Affidavit to reach the *opposite* conclusion: that Mr. Turner had heard about the comments secondhand. *See* Opinion, R.40, PageID #471. The district court interpreted Mr. Turner's statement that he "was told by the inmates a 'hit' was put on him because of the 'rat' comments made by Lt. Bare," Turner Affidavit, R.33, PageID #445, to mean that "other inmates told Turner that Bare said he was a 'rat,'" Opinion, R.40, PageID #471. However, the statement merely explains that other prisoners informed Mr. Turner that a hit had been put out on him *as a result of* Defendant Bare's comments; not that they informed him of the comments in the first place.

> ### 2. Drawing the proper inferences, Mr. Turner's Verified Complaint shows that he personally heard Defendant Bare's comments.

In addition to his Affidavit, Mr. Turner's Verified Complaint constitutes additional and distinct admissible evidence of Defendant Bare's dangerous comments. The district court's contrary conclusion that "nothing in the Complaint suggests Turner's allegations are based on personal knowledge," Opinion, R.40, PageID #471, is the result of improper inferences at summary judgment.

A complaint verified with the language of 28 U.S.C. § 1746 has "the same force and effect as an affidavit" and may "give rise to genuine issues of material fact." *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992); *see also El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). Here, Mr. Turner's complaint meets all the

33

requirements of 28 U.S.C. § 1746—it is signed, dated, and declared to be true and correct "under penalty of perjury"—and is therefore admissible evidence capable of demonstrating a genuine issue of material fact. Verified Complaint, R.1, PageID #14; *Williams*, 981 F.2d at 905.

In his Verified Complaint, Mr. Turner explains that Defendant Bare "made statements to Michael Carper in front of several inmates that the plaintiff was a confidential informant." Verified Complaint, R.1, PageID #10. In concluding that Mr. Turner lacked personal knowledge of Defendant Bare's comments, the district court drew the improper inference that Mr. Turner was not one of those "several inmates" who heard the conversation. But the Verified Complaint does not say that, and "all justifiable inferences are to be drawn" in favor of the non-movant, not the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Accordingly, any ambiguity in the Verified Complaint must be construed in Mr. Turner's favor. As this Court has observed, the failure to mention something is not the same as admitting it does not exist. *Briggs v. Potter*, 463 F.3d 507, 513 (6th Cir. 2006) (rejecting district court's "reli[ance] upon the principle that [plaintiff's] failure to mention such a material piece of evidence . . . was akin to admitting . . . that such evidence did not exist"). For that reason, when the source of knowledge is ambiguous, district courts "resolve the ambiguity . . . in Plaintiff's favor" and "presume" that testimony is "from personal knowledge." *See, e.g.*, *Lilla v. Comau*

34

*Pico, Inc.*, No. 05-72518, 2007 WL 851636 (E.D. Mich. Mar. 21, 2007). They are "obliged" to do so. *Id.* It makes particular sense to do so when a subsequent filing—like the Affidavit here—clarifies the initial ambiguity and states that it was based on personal knowledge. *C.f. Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 909 (6th Cir. 2006) (explaining there is no "direct contradiction" where subsequent evidence "reveal[s] information that was not fully explored" in prior evidence).

As a final note, it is reasonable to infer that the statements in the Verified Complaint are based on personal knowledge. Even in ordinary conversation, when somebody says "Person X said Y," it is reasonable to infer that they heard person X say Y. It is not the only possible interpretation, but it is a reasonable one. This intuition is even stronger where, as here, the person is willing to say so under penalty of perjury. Without some facts from which one could infer that the person learned of X's statement secondhand, one could only speculate that the person lacked personal knowledge. That is the case here: There is no information, in the Verified Complaint or elsewhere in the record, to suggest that Mr. Turner learned that Defendant Bare told other prisoners he was a confidential informant from someone else. But even if it were reasonable to infer from the Verified Complaint that Mr. Turner heard about Defendant Bare's comments secondhand, that would not support the grant of summary judgment unless it would also have been *unreasonable* to infer that he heard the comments himself. *Jones v. Potter*, 488 F.3d 397, 407 (6th Cir. 2007). And

35

none of the evidence in the summary judgment record made it unreasonable for the Court to draw that inference in favor of the non-moving Mr. Turner.

\* \* \*

It is only by overlooking a key statement in the Affidavit and then drawing improper inferences against Mr. Turner, a *pro se* litigant and the party opposing summary judgment, that the district court was able to grant summary judgment to Defendant Bare on the deliberate indifference claim. This Court should reverse and remand.

**B. Accepting that Defendant Bare told other prisoners that Mr. Turner was a confidential informant, as required at summary judgment, he violated the Eighth Amendment.**

To prove an Eighth Amendment violation, a prisoner must show that he was incarcerated under conditions posing "a substantial risk of serious harm" and that a prison official acted with "deliberate indifference" to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. Mr. Turner has met this burden.

The evidence shows that Defendant Bare knowingly placed Mr. Turner at a substantial risk of "serious bodily harm or death"—a risk that materialized when Mr. Turner was assaulted—by telling other prisoners that he was a confidential informant. In fact, Defendant Bare himself acknowledged that identifying a prisoner

36

as a confidential informant would subject that prisoner to violence. Read in the light most favorable to Mr. Turner, as required, these facts make out a paradigmatic deliberate indifference violation.

### 1. Defendant Bare's comments created a substantial risk of serious harm to Mr. Turner, including death threats and assault.

The first prong of the deliberate indifference inquiry asks whether "a substantial risk of serious harm" exists. *Farmer*, 511 U.S. at 834. There is no question that "being identified as a 'snitch' in prison puts an inmate at substantial risk of assault." *Westmoreland v. Butler County, Kentucky*, 29 F.4th 721, 729-30 (6th Cir. 2022). Indeed, prison psychologists have explained that labeling someone a "snitch" may make them "a target for other prisoners' attacks" and is "probably the worst label that you . . . could have put on you if you were in prison." *Comstock v. McCrary*, 273 F.3d 693, 699 n.2 (6th Cir. 2001) (citations omitted); *see also McGowan v. Herbert*, No. 22-2033, 2023 WL 2945341, at *3 (6th Cir. Apr. 14, 2023) (explaining that prisoners had "an incentive to attack" a prisoner labeled "a snitch"). On its own, then, "labeling an inmate a snitch satisfies the *Farmer* standard." *LaFountain v. Martin*, 334 F. App'x 738, 741 (6th Cir. 2009) (quoting *Benefield v. McDowall,* 241 F.3d 1267, 1271 (10th Cir. 2001).

Here, the substantial risk of harm actually materialized. As a result of Defendant Bare's comments, a "hit" was put on Mr. Turner. Turner Affidavit, R.33, PageID #445. Less than two weeks after he was returned to general population, that

hit was carried out: Mr. Turner was attacked by another prisoner, who hit him in the head with a lock. Protective Custody Form, R.23-6, PageID #141. The assault left Mr. Turner with a wound on his ear and bleeding in his ear canal, which required medical attention. Incident Report Summary, R.23-7, PageID ##143-45. This easily and independently satisfies the first prong of the deliberate indifference inquiry. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001) (reversing summary judgment on deliberate indifference claim where plaintiff was "beaten").

Even after the attack, Mr. Turner continued to face a substantial risk of harm. He "was so scared" of a second attack that he "request[ed] protective custody." Verified Complaint, R.1, PageID #10. When that request was denied, he appealed, explaining, "If I go back to the yard, they are going to kill me. Michael Carper (the inmate that other inmates believe I informed on) has two life sentences and has a lot of pull on the yard. . . . They already threatened to stab me and I am in fear for my life. . . . There is a ticket on my head." Protective Custody Form, R.23-6, PageID #140. The substantial risk of harm thus persisted even after he was assaulted. *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993) ("[U]nsafe conditions need not await a tragic event.").

38

> ## 2. *Defendant Bare knew of and disregarded an excessive risk to Mr. Turner's safety when he told other prisoners that Mr. Turner was a confidential informant.*

To satisfy the second prong of the deliberate indifference test, a plaintiff must demonstrate that the prison official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, that he did in fact draw that inference, and that he failed to take reasonable measures to abate the risk. *Farmer*, 511 U.S. at 837, 847; *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021). Here, Defendant Bare admitted he knew that labelling someone a confidential informant would place that person at substantial risk of serious harm. Bare Affidavit, R.32-4, Page ID # 355. In any event, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious," *Farmer*, 511 U.S. at 842, and the risk was obvious here.

Defendant Bare himself invoked his "experience as an Internal Affairs officer" to explain that labeling someone a confidential informant "would be counterproductive" and "would subject that inmate to possible violence from other inmates." Bare Affidavit, R.32-4, Page ID # 355. To be sure, Defendant Bare denies identifying Mr. Turner as a confidential informant in the first place, but that merely evidences a material dispute of fact in light of Mr. Turner's admissible evidence to the contrary. *See supra* Section III.A. Accepting that he labeled Mr. Turner a confidential informant, as is required at this stage, Defendant Bare's subsequent

39

acknowledgement of the associated risk satisfies the subjective prong of the deliberate indifference inquiry. *See Leary v. Livingston Cnty.*, 528 F.3d 438, 442 (6th Cir. 2008) (holding that defendant's "own words" demonstrated his awareness of a risk of harm from telling other detainees that plaintiff was charged with sexually assaulting a child).

There is also ample circumstantial evidence in the record from which a factfinder may conclude that the risk of harm to Mr. Turner was obvious to Defendant Bare. *Farmer*, 511 U.S. at 842. By August 2020—when Defendant Bare told other prisoners that Mr. Turner was a confidential informant—he had already been employed by the Kentucky Department of Corrections (KDOC) for years and had been working at LLCC in the Internal Affairs unit for at least six months. Bare Affidavit, R.32-4, PageID #354. Anyone with a years-long employment history in corrections knows of the dangers facing prisoners who are seen as "snitches" or "rats." *See Comstock*, 273 F.3d at 699 n.2 (acknowledging prison psychologist's statement that "snitch" is "probably the worst label you . . . could have put on you if you were in prison.").

It is reasonable to infer that an Internal Affairs officer, like Defendant Bare, would be even more attuned to the risk because the position requires working with confidential informants. *See* Bare Affidavit, R.32-4, PageID #354 (explaining his duties in Internal Affairs involved "conducting investigations into major

40

disturbances, dangerous contraband, and staff misconduct"). KDOC policy recognizes that a prisoner may "jeopardize[] his personal safety" by being an informant and details confidentiality protocols that correctional officers must follow.[7] Accordingly, a jury could reasonably conclude that Defendant Bare knew of the substantial risk of harm associated with labeling a prisoner a confidential informant from the "very fact that the risk was obvious" to someone in his position. *Farmer*, 511 U.S. at 842.

Finally, Defendant Bare took no steps to abate the risk he created, which quickly resulted in actual harm. Mr. Turner was released from the RHU into general population soon after Defendant Bare made the comments. Harlan Affidavit, R. 25-7, PageID #207. And less than two weeks later, another prisoner hit him in the head with a lock, injuring his ear. Protective Custody Form, R.23-6, PageID #141; Incident Report Summary, R.23-7, PageID ##143-44. At no point during this time did Defendant Bare take steps to protect Mr. Turner from the risk of harm he created. This requires denying him summary judgment. *Leary*, 528 F.3d at 442 (affirming

---

[7] Kentucky Corrections Policies and Procedures 9.18 (Kentucky Dep't of Corrs. 2011), https://corrections.ky.gov/About/cpp/Documents/09/CPP%209.18.pdf (last accessed November 13, 2023). This Court may take judicial notice of KDOC's policy because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Demis v. Sniezek,* 558 F.3d 508, 513 n.2 (6th Cir. 2009) (taking notice of information available through BOP's Inmate Locator Service; *Silverbug v. Haney,* No. 19-6273, 2020 WL 6580034, at *2 (6th Cir. Jul. 29, 2020) (taking judicial notice of KDOC's phone policy).

41

denial of summary judgment to officer who put prisoner at risk of harm and then did nothing).

<center>* * *</center>

The district court erroneously concluded that Mr. Turner learned about Defendant Bare's dangerous comments from other prisoners. But Mr. Turner's Affidavit plainly states that he heard the comments himself and his Verified Complaint, properly construed, is a distinct source of competent summary judgment evidence for the same fact. Under the correct understanding of the evidence, this is an easy case: Defendant Bare's comments created a substantial risk of harm, he knew his comments would put Mr. Turner in danger, and, in fact, Mr. Turner was assaulted. This Court should reverse the district court's grant of summary judgment and send the case to trial or, at minimum, reverse and remand for the district court to properly consider Mr. Turner's evidence in deciding his deliberate indifference claim.

<center>42</center>

## CONCLUSION

For the foregoing reasons, this Court should reverse and remand.

Dated: November 13, 2023                Respectfully submitted,

                        */s/* Megha Ram
                        Megha Ram*
                        Brendan Bernicker
                        RODERICK & SOLANGE MACARTHUR
                        JUSTICE CENTER
                        501 H Street NE, Suite 275
                        Washington DC 20002
                        (202) 869-3434
                        megha.ram@macarthurjustice.org
                        brendan.bernicker@macarthurjustice.org

                        *UCLA School of Law students
                        Michaela Firmage, Carson Horky,
                        Shireen Jalali-Yazdi, and Sylvia Lydon
                        contributed substantially to the
                        preparation of this brief.

                    *Counsel for Timothy M. Turner*

43

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)**

1.      This Brief complies with type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and Circuit Rule 32(b) because, according to the word count function of Microsoft Word 2019, the Brief contains 10,176 words excluding the parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

2.      This Brief complies with the typeface and type style requirements of Rule 32(a)(5) and (6) of the Federal Rules of Appellate Procedure and Circuit Rule 32(b) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Times New Roman font for the main text and 14-point Times New Roman font for footnotes.

Dated: November 13, 2023                              /s/ Megha Ram
                                                     Megha Ram

## CERTIFICATE OF SERVICE

I, Megha Ram, hereby certify that on November 13, 2023, I electronically filed the foregoing document through the court's electronic filing system, and that it has been served on all counsel of record through the court's electronic filing system.

/s/ Megha Ram
Megha Ram

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

## United States District Court for the Western District of Kentucky, Case No. 3:20-cv-00813

| Docket No. | Description | Page ID |
|---|---|---|
| 1 | Verified Complaint | 1-15 |
| 1-1 | June 29 Boxers Grievance | 16 |
| 1-1 | Boxers Grievance Rejection Notice | 17-19 |
| 1-1 | July 15 Boxers Grievance | 20 |
| 1-1 | Grievance Regarding Bare Comments | 22 |
| 1-1 | Letter to Robey | 23 |
| 1-1 | Letter to Bare | 24 |
| 7 | Screening Opinion | 51-62 |
| 23-6 | Protective Custody Form | 139-42 |
| 23-7 | Incident Report Summary | 143-45 |
| 32 and 32-1 | Motion for Summary Judgment | 316-45 |
| 32-3 | Disciplinary Report Form | 351-53 |
| 32-4 | Bare Affidavit | 354-57 |
| 32-6 | Long Affidavit | 360-63 |
| 32-7 | Harlan Affidavit | 364-69 |
| 32-8 | June to Dec 2020 Detention Orders | 370-93 |
| 32-10 | Crawford Affidavit | 400-02 |
| 32-12 | Gunter Affidavit | 405-07 |
| 32-13 | Policy Memorandum | 408 |
| 33 | Turner Affidavit / Response to Motion for Summary Judgment | 444-49 |
| 34 | Summary Judgment Reply | 450-53 |
| 36 | Notice of Change of Address | 460-61 |

| 40 | Memorandum Opinion and Order | 465-74 |
|----|------------------------------|--------|
| 42 | Notice of Appeal             | 476-78 |