**No. 23-5685**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

---

TIMOTHY M. TURNER,

*Plaintiff-Appellant*,

v.

HELEN R. LONG, ET AL.,

*Defendants-Appellees*.

---

On Appeal from the United States District Court for the Western
District of Kentucky, No. 3:20-cv-00813
Before the Hon. Joseph H. McKinley, Jr.

---

**PLAINTIFF-APPELLANT'S REPLY BRIEF**

---

Megha Ram*
RODERICK & SOLANGE MACARTHUR
JUSTICE CENTER
501 H Street NE, Suite 275
Washington DC 20002
(202) 869-3439
megha.ram@macarthurjustice.org

*UCLA School of Law students
Michaela Firmage, Carson Horky,
Shireen Jalali-Yazdi, and Sylvia
Lydon contributed substantially to
the preparation of this brief.

*Counsel for Timothy M. Turner*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ..............................................................................................1

ARGUMENT ....................................................................................................1

I.      The Eighth Amendment conditions claim must proceed. ...............................1

        A. Defendants concede the district court's sole reason for granting summary judgment was error; this Court should remand. ...............................................1

        B.  Defendants' alternative arguments are wrong. ........................................3

            1. Defendants violated the Eighth Amendment by forcing Mr. Turner to remain in soiled boxers for 22 days........................................................4

            2.  Defendants are not entitled to qualified immunity. ...........................10

II.     The Fourth Amendment bodily privacy claim must proceed.........................15

        A. This Court should remand for the requisite analysis. ..............................15

        B. Under the proper standard, Mr. Turner prevails. ....................................17

            1. Defendants violated the Fourth Amendment by forcing Mr. Turner to expose his genitals for weeks. ...............................................................17

            2. Defendants are not entitled to qualified immunity..............................20

III.    Defendant Bare is not entitled to summary judgement on Mr. Turner's deliberate indifference claim. .......................................................................22

        A.  Mr. Turner's Affidavit is based on personal knowledge. ........................23

        B.  Mr. Turner's Verified Complaint also supports an inference he heard Defendant Bare's Comments. ....................................................................26

CONCLUSION ................................................................................................28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Abner v. Saginaw County*,
496 F. Supp. 2d 810 (E.D. Mich. 2007) ......................................................15, 20

*Abner v. Saginaw County*,
No. 05-10323, 2007 WL 4322167 (E.D. Mich. Nov. 28, 2007) ............15, 16, 18

*American Civil Liberties Union of Ohio Foundation, Inc. v. DeWeese*,
633 F.3d 424 (6th Cir. 2011) ...................................................................27

*Anderson v. Bristol, Inc.*,
936 F.Supp.2d 1039 (S.D. Iowa, 2013) ......................................................24, 25

*Barker v. Goodrich*,
649 F.3d 428 (6th Cir. 2011) ....................................................................*passim*

*Bazzi v. City of Dearborn*,
658 F.3d 598 (6th Cir. 2011) .......................................................................3, 14

*Berkshire v. Dahl*,
928 F.3d 520 (6th Cir. 2019) ........................................................................4, 11

*Boykin v. Family Dollar Stores of Michigan, LLC*,
3 F.4th 832 (6th Cir. 2021) ........................................................................26, 27

*Brooks v. Warden*,
800 F.3d 1295 (11th Cir. 2015) ...................................................................7, 12

*Brown v. Bagery*,
207 F.3d 863 (6th Cir. 2000) .............................................................................9

*Brown v. Crowley*,
312 F.3d 782 (6th Cir. 2002) ......................................................................1, 3

*Byrd v. Haas*,
17 F.4th 692 (6th Cir. 2021) .........................................................................16

*Catz v. Chalker*,
142 F.3d 279 (6th Cir. 1998) ............................................................................2

*Cochrane v. Quattrocchi*,
  949 F.2d 11 (1st Cir. 1991)....................................................................................9

*Cornwell v. Dahlberg*,
  963 F.2d 912 (6th Cir. 1992) ...............................................................................15

*Cummings v. City of Akron*,
  418 F.3d 676 (6th Cir. 2005) .........................................................................10, 21

*DeSpain v. Uphoff*,
  264 F.3d 965 (10th Cir. 2001) ...........................................................5, 8, 11, 13

*Est. of Carter v. City of Detroit*,
  408 F.3d 305 (6th Cir. 2005) .................................................................................8

*Farmer v. Brennan*,
  511 U.S. 825 (1994).........................................................................................9, 10

*Farmer v. Perrill*,
  288 F.3d 1254 (10th Cir. 2002) ...........................................................................21

*Favela v. Collier*,
  91 F.4th 1210 (5th Cir. 2024) ..............................................................................27

*Fortner v. Thomas*,
  983 F.2d 1024 (11th Cir. 1993) ...........................................................................21

*Freed v. Thomas*,
  976 F.3d 729 (6th Cir. 2020) .................................................................................2

*Glover v. Grant Cty. Det. Ctr.*,
  No. 10-88, 2010 WL 2804054 (E.D. Ky. Jul. 15, 2010) ......................................7

*Helling v. McKinney*,
  509 U.S. 25 (1993).................................................................................................7

*Hope v. Pelzer*,
  536 U.S. 730 (2002).......................................................................................12, 13

*Howard v. Atkinson*,
  887 F.2d 134 (8th Cir. 1989) ........................................................................12, 14

iii

*Hutchins v. McDaniels*,
    512 F.3d 193 (5th Cir. 2007) ....................................................................21

*Hutto v. Finney*,
    437 U.S. 678 (1978)..................................................................................5

*Johnson v. Pelker*,
    891 F.2d 136 (7th Cir. 1989) ...................................................................12

*Jones v. Solomon*,
    90 F.4th 198 (4th Cir. 2024) ..............................................................5, 12

*Knop v. Johnson*,
    667 F. Supp. 467 (W.D. Mich. 1987) .......................................................6

*LaFountain v. Martin*,
    334 F. App'x 738 (6th Cir. 2009) .............................................................2

*Lamb v. Howe*,
    677 F. App'x 204 (6th Cir. 2017) .........................................................4, 5

*LaReau v. MacDougall*,
    473 F.2d 974 (2nd Cir. 1972) .................................................................11

*Lee v. Russ*,
    33 F.4th 860 (6th Cir. 2022) ............................................................10, 20

*McCorkle v. Walker*,
    871 F. Supp. 555 (N.D.N.Y. 1995)............................................................6

*McNatt v. Unit Manager Parker*,
    No. 3:99-cv-1397, 2000 WL 307000 (D. Conn. Jan. 18, 2000)...........................7

*Moderwell v. Cuyahoga County*,
    997 F.3d 653 (6th Cir. 2021) ..................................................................12

*Moss v. DeTella*,
    No. 96-c-5398, 1997 WL 24745 (N.D. Ill., Jan. 16, 1997) ................................7

*Parrish v. Johnson*,
    800 F.2d 600 (6th Cir. 1986) .............................................................4, 11

*Rhodes v. Chapman*,
452 U.S 337 (1981)..................................................................................4, 5, 6

*Rhodes v. Michigan*,
10 F.4th 665 (6th Cir. 2021) .............................................................10, 11, 20

*Schroeder v. McDonald*,
55 F.3d 454 (9th Cir. 1995) ......................................................................25, 27

*Silverbug v. Haney*,
No. 19-6273, 2020 WL 6580034 (6th Cir. Jul. 29, 2020) ................................13

*Stoudemire v. Mich. Dept. of Corrections*,
705 F.3d 560 (6th Cir. 2013) ...........................................................*passim*

*Taylor v. Larson*,
505 F. App'x 475 (6th Cir. 2012) ...................................................................4, 11

*Taylor v. Riojas*,
592 U.S. 7 (2020).........................................................................................12

*Thomas v. Hininger*,
No.15-3547, 2016 U.S. App. LEXIS 24188 (6th Cir. Feb. 25,
2016) ......................................................................................................4, 11

*Thompson v. Lengerich*,
798 F. App'x 204 (10th Cir. 2019).....................................................................9

*Thompson v. Skaggs*,
No. 2:22-cv-682, 2022 WL 1485281 (S.D. Ohio, May 11, 2022) ......................7

*Turner v. Safely*,
482 U.S 78 (1987).....................................................................................15, 19

*U.S. v. Houston*,
792 F.3d 663 (6th Cir. 2015) ...........................................................................2

*Wallace v. Coffee County, Tennessee*,
852 F. App'x 871 (6th Cir. 2021).......................................................................3

*Williams v. City of Cleveland*,
771 F.3d 945 (6th Cir. 2014) ...........................................................................19

*Wolf v. Ashcroft*,
   297 F.3d 305 (3rd Cir. 2002) ...................................................................16

*Wright v. J & S Extradition Serv.*,
   No. 3:11-cv-464, 2012 WL 1681812 (M.D. Tenn. May 11, 2012).....................7

*Young v. Quinlan*,
   960 F.2d 351 (3rd Cir. 1992) ..................................................................11

**Other Authorities**

Fed. R. Civ. P. 56(c)(1)(A) ........................................................................27

Fed. R. Civ. P. 56(c)(4)..............................................................................23

Fed. R. Evid. 201(b)(2) ..............................................................................13

Kentucky Dept. of Corr. Policies and Procedures 10.2, Section
   II(A)(4)(a) (2020).................................................................................26

Kentucky Dept. of Corr., Policies and Procedures 10.2, Section
   II(A)(4)(e)(2) (2020)..............................................................................13

Kentucky Dept. of Corr., Policies and Procedures 14.2, Section II(B)
   (2014)..................................................................................................13

**INTRODUCTION**

Mr. Turner was subjected to repugnant, humiliating, and dangerous conditions. He was compelled to wear the same feces-stained paper underwear for weeks, forced to expose his genitals to officers and prisoners alike, and assaulted by another prisoner after being labeled a confidential informant. On appeal, Defendants blame Mr. Turner for the conditions of his confinement and misconstrue the record to avoid liability. This Court should reverse.

**ARGUMENT**

I.    **The Eighth Amendment conditions claim must proceed.**

   **A. Defendants concede the district court's sole reason for granting summary judgment was error; this Court should remand.**

The district court granted summary judgment on Mr. Turner's conditions claim for one reason: that the absence of a physical injury barred his claim under Section 1997e(e) of the PLRA. Opinion, R.40, PageID#472-73. Defendants "concede" this was "error," but urge affirmance on other grounds. AB24-25. This Court should reject that invitation and remand.

"Absent exceptional circumstances," this Court "normally decline[s] to rule on an issue not decided below." *Stoudemire v. Mich. Dept. of Corrections*, 705 F.3d 560, 576 (6th Cir. 2013) (cleaned up). Because "[d]istrict courts are far more familiar with the factual record in their cases," remand ensures "any future appeal . . . will have the benefit of the district court's analysis." *Brown v. Crowley*, 312 F.3d 782,

788 (6th Cir. 2002). Accordingly, "the best course" will often be "to remand." *Stoudemire*, 705 F.3d at 571. This is true even where the appeal is from a grant of summary judgment. *LaFountain v. Martin*, 334 F. App'x 738, 742 (6th Cir. 2009) (vacating grant of summary judgment and remanding for further proceedings "including, if appropriate, additional motions for summary judgment").

Remand makes particular sense where the lower court ruled on distinct threshold issues and never "directly address[ed]" the constitutional claim. *See Freed v. Thomas*, 976 F.3d 729, 732, 741 (6th Cir. 2020) (remanding for consideration of constitutional claim "in the first instance"). That is what happened here: the district court incorrectly held that Section 1997e(e) of the PLRA barred Mr. Turner's claim. Opinion, R.40, PageID#472-73. It never analyzed whether being forced to wear the same moldy, urine- and feces-stained paper underwear for 22 days violated the Eighth Amendment and did not even mention qualified immunity. *Id.* As "a court of review, not first view," this Court should remand. *U.S. v. Houston*, 792 F.3d 663, 669 (6th Cir. 2015).

Defendants point to no "exceptional circumstances" that would justify deviating from the standard remand rule. *Stoudemire*, 705 F.3d at 576. Indeed, their cited authorities actually support remand here. In *Catz v. Chalker*, for example, this Court reached the constitutional question because the record had been "sufficiently developed below" and "the salient issues involve[d] solely questions of law." 142

2

F.3d 279, 286-87 (6th Cir. 1998) (cleaned up). Similarly, in *Bazzi v. City of Dearborn*, this Court considered qualified immunity only *after* the district court addressed the constitutional violation. 658 F.3d 598, 606 (6th Cir. 2011).[1] Here, by contrast, reaching the merits would require this Court to wade into factual disputes the district court never reached: Defendant Bare's presence in the RHU, the existence of the paper boxer policy and exceptions to it, and each Defendants' knowledge about the state of Mr. Turner's boxers during the 22 days he was forced to remain in them. The Court should therefore remand to ensure "any future appeal . . . will have the benefit of the district court's analysis" on these points. *Brown*, 312 F.3d at 788.

## B. Defendants' alternative arguments are wrong.

If this Court takes the "exceptional" step of reaching the constitutional question, *Stoudemire*, 705 F.3d at 576, it should still reverse. Defendants cast this claim as one about preference and aesthetics. *See* AB29. But Mr. Turner did not complain that he got blue boxers instead of red, nor did he lament that the size-L boxers were unflattering. Rather, Mr. Turner's claim concerns Defendants' refusal to provide properly-fitting clean boxers to replace the soiled, moldy, foul-smelling,

---

[1] Defendants' final case—*Wallace v. Coffee County, Tennessee*, 852 F. App'x 871 (6th Cir. 2021)—is irrelevant because the appellate court did not reach any issues the district court had not already considered in the first instance.

and disintegrating underwear he was forced to wear for over three weeks. That is a constitutional violation for which Defendants are not entitled to qualified immunity.

### 1. *Defendants violated the Eighth Amendment by forcing Mr. Turner to remain in soiled boxers for 22 days.*

An Eighth Amendment conditions-of-confinement claim has an objective and subjective prong. *Berkshire v. Dahl*, 928 F.3d 520, 537 (6th Cir. 2019). The objective prong is satisfied where a prisoner is denied "the minimal civilized measures of life's necessities." *Rhodes v. Chapman*, 452 U.S 337, 347 (1981). The subjective prong is satisfied where prison officials act or fail to act despite knowing of the substantial risk of serious harm stemming from such a denial. *Berkshire*, 928 F.3d at 537. That knowledge may be inferred "from the very fact that the risk was obvious." *Id.*

**a.** Turning first to the objective prong, "exposure to human waste is a condition that courts will more quickly find sufficiently serious." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017). Accordingly, an Eighth Amendment violation results when a prisoner is denied a bathroom break and is left "to lay in his own urine and feces for several hours." *Berkshire*, 928 F.3d at 538; *see also Parrish v. Johnson*, 800 F.2d 600, 602, 605 (6th Cir. 1986) (Eighth Amendment violation where official caused prisoner to sit in own feces). It is likewise unconstitutional to force a prisoner to live in proximity to fecal matter, *Taylor v. Larson*, 505 F. App'x 475 (6th Cir. 2012), or to sleep just feet from a leaking toilet, *Thomas v. Hininger*, No.15-3547, 2016 U.S. App. LEXIS 24188 at *8-9 (6th Cir. Feb. 25, 2016).

That Defendants' conduct persisted for over three weeks makes the violation here all the more egregious. As the Supreme Court has recognized, conditions "might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 687 (1978); *see also Lamb*, 677 F. App'x at 209 (explaining one "guiding principle" in conditions cases "is that the length of exposure" is "paramount"). Indeed, the Fourth Circuit expressed "serious doubts" about the constitutionality of a prisoner's conditions when he was forced to wear feces-stained boxers for just 23 hours, and explained that the same conditions "persisting for only a slightly longer duration" might amount to a constitutional violation. *Jones v. Solomon*, 90 F.4th 198, 203-04, 208, 212-13 (4th Cir. 2024). And in *DeSpain v. Uphoff*, the Tenth Circuit held that a 36-hour exposure to urine and feces via standing water was sufficiently serious to violate the Eighth Amendment. 264 F.3d 965, 974 (10th Cir. 2001). Here, Mr. Turner was left in "mold[y]," "foul," "urine and feces stain[ed]" boxers for 22 *days*. Verified Complaint, R.1, PageID#5. This violated the Eighth Amendment.

Mr. Turner's conditions also violated the Eighth Amendment because they served "no penological need." *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (violation where prisoner was "denied adequate access to water and a restroom" for "no legitimate penological purpose"); *see also Rhodes*, 452 U.S. at 346 (Eighth Amendment prohibits wanton infliction of pain "totally without penological

5

justification"). Defendants claim the paper clothing policy was necessary to prevent suicides and that Mr. Turner's size was on back-order. AB30, 38. But their abandonment of that policy—even temporarily—undermines that claim. In other words, even if paper boxers had some general justification, when the choice was soiled paper boxers, nakedness, or cloth boxers, the answer should have been clear. Indeed, it was so obvious that the deputy warden "authorized" "exceptionally large" prisoners to "wear their own personal cloth boxers," Gunter Affidavit, R.32-12, PageID#406, and a non-defendant officer gave Mr. Turner his cloth boxers minutes after learning of his situation, Verified Complaint, R.1, PageID#7.

Despite all this, Defendants urge this Court to find that Mr. Turner's conditions were not objectively serious. They suggest Mr. Turner is merely concerned with the lack of "aesthetically pleasing" or properly fitting clothing. AB29 (quoting *Knop v. Johnson*, 667 F. Supp. 467, 475 (W.D. Mich. 1987)). But moldy, feces-stained boxers go beyond aesthetics. Moreover, the *Knop* court actually held for the plaintiff class, recognizing that proper clothing is a "necessit[y] of life" that cannot be deprived. *Knop*, 667 F. Supp. at 475.

Defendants' reliance on *McCorkle v. Walker*, 871 F. Supp. 555 (N.D.N.Y. 1995), fares no better. That court's comment about "the lack of a change of underwear for fifteen days," *id.* at 557, cannot create a categorical rule because "[n]o static test" exists for conditions claims, *Rhodes*, 452 U.S. at 346. Context matters,

6

and we have no context for the *McCorkle* plaintiff: we do not know whether he was left in paper or cloth underwear, whether his underwear was moldy, urine- and feces-stained, or whether he could clean his underwear. And anyway, Mr. Turner wore the same underwear for far longer than the *McCorkle* plaintiff.

Defendants' other authorities are equally unavailing because they concern shorter durations and lack any circumstances approaching Mr. Turner's. *See, e.g.*, *Glover v. Grant Cty. Det. Ctr.*, No. 10-88, 2010 WL 2804054 (E.D. Ky. Jul. 15, 2010) (same underwear for six days); *Wright v. J & S Extradition Serv.*, No. 3:11-cv-464, 2012 WL 1681812 (M.D. Tenn. May 11, 2012) (same clothes for at most five days); *Thompson v. Skaggs*, No. 2:22-cv-682, 2022 WL 1485281 (S.D. Ohio, May 11, 2022) (denial of new underwear for week); *Moss v. DeTella*, No. 96-c-5398, 1997 WL 24745 (N.D. Ill., Jan. 16, 1997) (no laundry service for 111 days where necessitated by lockdown); *McNatt v. Unit Manager Parker*, No. 3:99-cv-1397, 2000 WL 307000 (D. Conn. Jan. 18, 2000) (denied toilet paper for one day and clean clothing for six days).

Finally, Defendants argue that Mr. Turner's conditions were not serious because he "failed to allege any significant health conditions." AB30. Not so: he specifically grieved "the safety aspect" of wearing soiled boxers. June 29 Grievance, R.1-1, PageID#16. And "the health risks of prolonged exposure to human excrement are obvious." *Brooks v. Warden*, 800 F.3d 1295, 1305 (11th Cir. 2015); *Helling v.*

7

*McKinney*, 509 U.S. 25, 34 (1993) (holding Eighth Amendment protects against sufficiently imminent dangers). In any case, Mr. Turner need not show that he was sick or hurt; this Court has squarely "held that there is a substantial risk of serious harm 'in the denial of the minimal civilized measure of life's necessities.'" *Barker*, 649 F.3d at 434. "Exposure to human waste, like few other conditions of confinement, evokes both []health concerns" *and* "the more general standards of dignity embodied in the Eighth Amendment." *DeSpain*, 264 F.3d at 974.

**b.** As for the subjective prong of the analysis, Defendants Bare, Harlan, and Long each acted or failed to act despite knowing of the substantial risk of harm. They do not meaningfully argue otherwise, focusing on their awareness of Mr. Turner's "bodily exposure" rather than the foul condition of his underwear. *See* AB31-33. On the latter point, the evidence is clear: Mr. Turner "informed" Defendants Long and Harlan that his boxers "had a foul odor and [were] smelling of urine and were stained." Verified Complaint, R.1, PageID#5. Indeed, he "begg[ed] and plead[ed] daily for relief" because his boxers "had mold in them" as well as "urine and feces stains." *Id*. Mr. Turner also filed a grievance in which he described the "nasty" state of his boxers, and explained the boxers had "urine [and] feces[] stains" on them. June 29 Grievance, R.1-1, PageID#16. A jury could easily find from this evidence that Defendants Long and Harlan knew about Mr. Turner's soiled boxers. *Est. of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir. 2005) (affirming denial of

8

summary judgment where officer was "directly informed" by detainee of her distress); *Brown v. Bagery*, 207 F.3d 863, 868 (6th Cir. 2000) (reversing dismissal based on "repeated attempts to notify prison officials").[2]

Despite this knowledge, Defendants rejected Mr. Turner's pleas for his cloth underwear and forced him to remain in the soiled paper boxers. Verified Complaint, R.1, PageID#5. They argue that it was reasonable to offer Mr. Turner, a 350-pound man, boxers that were three sizes too small. AB30. But a choice between too-small boxers that would rip and expose his genitals—which is what later happened—and moldy feces-stained boxers is a "constitutionally intolerable choice." *Cochrane v. Quattrocchi*, 949 F.2d 11, 14-15 (1st Cir. 1991) (cleaned up); *see also Thompson v. Lengerich*, 798 F. App'x 204, 209 (10th Cir. 2019) (explaining it is "a Hobson's choice" to make prisoner choose between "hygiene/sanitation" and "personal safety" because either way he "would be deprived of humane conditions"). Again, Defendants *had* other options: "exceptionally large" prisoners were authorized to use "their own personal cloth boxers," Gunter Affidavit, R.32-12, PageID#406, and

---

[2] While Defendant Bare presents a closer call, a jury could find that he had the requisite subjective knowledge. Defendant Bare admitted he interacted with Mr. Turner in the RHU, Bare Affidavit, R.32-4, PageID#355, and Mr. Turner established that Defendant Bare spent time there, Grievance Regarding Bare Comments, R.1-1, PageID#22. A jury could consider the boxers' state—including their "foul odor" and that they were "falling apart," Verified Complaint, R.1, PageID#5—and conclude Defendant Bare knew both about their state and the related risk of harm from the "very fact" that it "was obvious." *Farmer*, 511 U.S. at 842.

another officer ultimately gave Mr. Turner cloth boxers, Verified Complaint, R.1, PageID#7. Thus, Defendants "disregard[ed]" the risk of harm "by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

### 2. *Defendants are not entitled to qualified immunity.*

Defendants are not entitled to qualified immunity if they violated a clearly established constitutional right. *Barker*, 649 F.3d at 433. The law can be clearly established in at least two ways. First, "a sufficiently analogous case" may put officials on notice that their conduct is unconstitutional. *Rhodes v. Michigan*, 10 F.4th 665, 679 (6th Cir. 2021). Second, in an "obvious case . . . general principles suffice" to clearly establish the law. *Lee v. Russ*, 33 F.4th 860, 863 (6th Cir. 2022). Defendants are not entitled to immunity under either analysis.

**a.** To be sufficiently analogous for qualified immunity purposes, a prior case need not present "the exact same fact pattern, or even 'fundamentally similar' or 'materially similar' facts." *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005). "All that is required" is a case from which a "reasonable official would understand that what he is doing violates th[e] right." *Rhodes*, 10 F.4th at 679. Here, caselaw from this Court and sister circuits clearly establishes the unconstitutionality of subjecting a prisoner to sustained contact with human waste.

In *Berkshire*, this Court denied immunity to an officer who denied a prisoner a bathroom break and then left him "to lay in his own urine and feces for several

10

hours." 928 F.3d at 538. In so doing, this Court relied on prior cases where prisoners were denied bathroom breaks and explained that any "differences" in the facts of those cases were "immaterial." *Id*. It was enough that those prior cases clearly established that denying a prisoner "life's necessities" "without a penological purpose" violated the Eighth Amendment. *Id*. The *Berkshire* Court's application of that rule to a case concerning sustained contact with a prisoner's own excrement clearly established the law here. Indeed, this clearly established right finds additional support in a host of this Court's caselaw. *Parrish*, 800 F.2d at 605 (finding that "[c]ausing a prisoner to sit in his own feces" is "unnecessary" and therefore a constitutional violation); *Taylor*, 505 F. App'x at 478 (three days in cell with feces violated constitution); *Thomas*, 2016 U.S. App. LEXIS 24188 (violation to force prisoner to sleep feet away from toilet leaking nearby).[3]

The "great weight of cases" from sister circuits further "condemn[] on constitutional grounds an inmate's exposure to human waste." *DeSpain*, 264 F.3d at 979; *see also LaReau v. MacDougall*, 473 F.2d 974, 978 (2nd Cir. 1972) (violation where prisoner spent five days in cell where toilet was grate-covered hole because proximity to "human waste is too debasing and degrading to be permitted"); *Young v. Quinlan*, 960 F.2d 351 (3rd Cir. 1992) (violation where prisoner forced to defecate

---

[3] Even unpublished cases like *Taylor* and *Thomas* "provide strong evidence of the clearly established law." *Rhodes*, 10 F.4th at 683.

in cell without toilet for days); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (three days in cell with feces on walls not within "civilized standards, humanity, and decency"); *Howard v. Atkinson*, 887 F.2d 134, 137 (8th Cir. 1989) (violation where prisoner exposed to feces in cell and on mattress); *Brooks v. Warden*, 800 F.3d 1295, 1303 (11th Cir. 2015) (violation where prisoner forced to defecate into jumpsuit and sit in feces for two days); *cf. Jones*, 90 F.4th at 208 (expressing "serious doubts about the[] constitutionality" of causing prisoner to live with "fecal matter" on boxers for 23 hours).

**b.** Even if there were not sufficiently similar cases, this is an obvious case where the "unlawfulness" of Defendants' conduct "is sufficiently clear." *Moderwell v. Cuyahoga County*, 997 F.3d 653, 660 (6th Cir. 2021); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (officials "can still be on notice that their conduct violates established law even in novel factual circumstances"). In conducting this analysis, "the reasoning" of prior cases, "prison regulations," and "the obvious cruelty" of a practice are all relevant. *Barker*, 649 F.3d at 435.

A "general constitutional rule" prohibits officials from keeping prisoners in "unsanitary conditions for an extended period of time" when not "compelled by necessity or exigency." *Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020) (per curiam) (cleaned up); *see supra*. Exposure to feces is an obvious "affront to human dignity" and carries with it "obvious health risk[s]." *Brooks*, 800 F.3d at 1307. Society is

12

therefore "unwilling[] to tolerate conditions that require an inmate to live in close proximity to human waste." *DeSpain*, 264 F.3d at 979.

If that weren't enough, "normal practice and prison policies" furnished additional notice that Defendants' actions were unlawful. *Barker*, 649 F.3d at 436; *see Hope*, 536 U.S at 744. Defendants Long and Harlan both described a practice of offering prisoners "clean, new, size-appropriate paper boxers 3-4 times a week." Long Affidavit, R.32-6, PageID#361; Harlan Affidavit, R.32-7, PageID#365. And Kentucky Department of Corrections (KDOC) policies explain that clothing "may be exchanged on a frequent basis"[4] and prisoners should be issued clothing that allows "an acceptable level of personal hygiene."[5] Despite these policies and Defendants' acknowledged practice of providing "clean" and "size-appropriate" underwear several times a week, they rejected Mr. Turner's reasonable request for clean cloth boxers, and forced him to remain in his soiled paper underwear for *over three weeks*.

---

[4] Policies and Procedures 10.2, Section II(A)(4)(e)(2) (KDOC 2020), https://corrections.ky.gov/About/cpp/Documents/10/CPP%2010.2%20Special%20Mgmt%20and%20RHU%20-%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%20-%20Clean.pdf (last accessed March 4, 2024). This Court may take judicial notice of KDOC's policies because their "accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Silverbug v. Haney*, No. 19-6273, 2020 WL 6580034, at *2 (6th Cir. Jul. 29, 2020) (taking judicial notice of prison phone policy).

[5] Policies and Procedures 14.2, Section II(B) (KDOC 2014), https://corrections.ky.gov/About/cpp/Documents/14/CPP%2014.2.pdf (last accessed March 4, 2024).

13

Defendants claim they "would not have believed that their conduct was unlawful" because prison policy required paper boxers and they could not have known the smaller boxers would fail. AB35-36. But genuine disputes remain on both points. First, the only policy memorandum in the record makes no mention of paper boxers. Policy Memorandum, R.32-13, PageID#408. Even if paper boxers were generally required, Mr. Turner has submitted substantial evidence that the policy allowed for exceptions. *See supra* p.6. Second, while Defendants offered Mr. Turner a smaller size, a jury could easily conclude that they did not need a 350-pound man to suffer the humiliation of attempting to squeeze into and rip paper underwear three sizes too small to know this wasn't a viable alternative. *See supra* p.9; *Howard v. Atkinson*, 887 F.2d 134, 140 (5th Cir. 1989) ("[C]ommon sense is sometimes helpful"). These factual disputes must be resolved in Mr. Turner's favor when conducting the qualified immunity analysis. *Bazzi*, 658 F.3d at 608.

* * *

This Court should remand for the district court to address the conditions claim in the first instance. But if it reaches the merits, it should hold that forcing Mr. Turner to remain in moldy, feces-stained, foul-smelling paper underwear for 22 days was unconstitutional and that Defendants are not entitled to immunity.

14

**II.    The Fourth Amendment bodily privacy claim must proceed.**

**A. This Court should remand for the requisite analysis.**

Defendants concede that in deciding the bodily privacy claim the district court failed to "undertake an analysis . . . under *Turner v. Safely*, 482 U.S 78 (1987)," but argue that the district court was "not required" to conduct that analysis. AB22. Defendants are wrong. *See* OB31-32; *Cornwell v. Dahlberg*, 963 F.2d 912, 916-17 (6th Cir. 1992) (remanding bodily privacy claim because court failed to instruct jury on *Turner*). This Court should remand for the district court to apply the correct analysis in the first instance.

Defendants argue no *Turner* analysis is required because a paper clothing policy passed constitutional muster in *Abner v. Saginaw County*, 496 F. Supp. 2d 810 (E.D. Mich. 2007), *vacated in part on reconsideration*, 2007 WL 4322167 (E.D. Mich. Nov. 28, 2007). *See* AB41-42. But *Abner* expressly applied the "factors identified in *Turner*" to reach its conclusion. 496 F.Supp.2d at 818. That is, *Abner* conducted the very analysis Defendants say is not required here. And while that court initially determined that paper gowns "satisfy privacy concerns," *id.* at 819-20, it vacated that holding after learning that the gowns failed to adequately cover some of the plaintiffs' private parts, *see* 2007 WL 4322167 at *3. That new information presented "a question" about the balance "between the detainees' privacy interests and the jailor's security needs." *Id.* at *1, *4. So, even if *Abner*'s analysis could

15

obviate the need for a *Turner* analysis here—and it cannot because *Turner* mandates "a contextual, record-sensitive analysis," *Wolf v. Ashcroft*, 297 F.3d 305, 310 (3rd Cir. 2002)—*Abner* wouldn't help Defendants. Like the successful *Abner* plaintiffs, Mr. Turner described how his paper boxers were inadequate: they "show[ed] pure nudity of plaintiffs body including his bare buttocks and genitals." Verified Complaint, PageID#6; *see* June 29 Boxers Grievance, R.1-1, PageID#16 (similar).

Defendants also argue no *Turner* analysis is necessary because "the policy of issuing paper clothing" was "not a factor" in Mr. Turner's exposure. AB22. But this Court's three-part test for bodily privacy claims applies whether a plaintiff is challenging a policy or "the acts of a single corrections officer." *Stoudemire*, 705 F.3d at 572, 574. Here, Mr. Turner challenges Defendants' refusal to temporarily allow him to wear cloth boxers during a several-week period when his paper boxers exposed his genitals. This is exactly the type of claim that requires a *Turner* analysis. *Id.*; *see also Abner*, 2007 WL 4322167.

Because the district court did not conduct the proper analysis in determining whether there was a constitutional violation, and did not even mention qualified immunity, this Court should remand so it can conduct both analyses in the first instance. *See Byrd v. Haas*, 17 F.4th 692, 697, 699 n.5, 700 (6th Cir. 2021) (reversing where district court's "framing [wa]s wrong" and remanding for correct *Turner* and qualified immunity analyses).

16

**B. Under the proper standard, Mr. Turner prevails.**

If this Court applies the requisite three-part test for bodily privacy claims in the first instance, it must reverse. *See* OB37-39. Unnecessary exposure of Mr. Turner's "bare buttocks and genitals," Verified Complaint, R.1, PageID#6, constitutes a constitutional violation for which Defendants are not entitled to qualified immunity.

### 1. Defendants violated the Fourth Amendment by forcing Mr. Turner to expose his genitals for weeks.

The first prong of the analysis assesses the "degree of invasion" of Mr. Turner's "personal rights." *Stoudemire*, 705 F.3d at 571-72. Defendants minimize the extreme invasion here by arguing that Mr. Turner was exposed only after July 15, 2020, and that he was therefore only in "failed boxers" for 24 hours. AB38-39. But the record belies this assertion: Mr. Turner explains that his boxers were "falling apart due to them being paper" as early as June 29 *and* that he told Defendants Long and Harlan about their condition by that date. June 29 Boxers Grievance, R.1-1, PageID#16; Verified Complaint, R.1, PageID#5. In fact, even Defendant Harlan acknowledged that Mr. Turner complained of "tearing" boxers by July 1, and Defendant Harlan then discussed the issue with Defendant Long. Harlan Affidavit, R.32-7, PageID#366. So, while Mr. Turner eventually tried on boxers that were three sizes too small at Defendants' insistence, and they "came apart at the seam" on July 15, he informed Defendants of the boxer failure and exposure weeks prior. Verified

17

Complaint, R.1, PageID#5-6. Things simply got worse when the too-small boxers "completely ripped out" and Mr. Turner's "buttocks [were] showing naked." *Id*. at PageID#6.

Attempting, again, to minimize the exposure, Defendants argue that any exposure was limited because the "smock covered his body to mid-thigh." AB39. But the smock routinely opened "because the velcro was not strong enough" and would "ride up" with movement. Turner Affidavit, R.33, PageID#446. As Mr. Turner explained, the smock "sadly[] expos[ed] the nakedness of a 400 pound person." *Id*. The exposure was so great that other prisoners directed lewd comments at Mr. Turner. Verified Complaint, R.1, PageID#5-6. Instead of helping, Defendants added insult to injury: Defendant Bare joked "looks like your ass [is] out of luck!" while Defendant Harlan commented "Nice." *Id*. at PageID#6. A jury could easily find a significant degree of invasion.

On the second prong—the need for the exposure—Defendants' refusal to provide Mr. Turner with boxers that covered his private parts served no penological interest. Defendants claim the paper boxer policy is like the policy the *Abner* court found reasonably related to a penological interest. AB42. But *Abner* cuts exactly the other way: on reconsideration, it questioned the penological need advanced, finding it persuasive that paper gowns "did not adequately cover" plaintiffs because they "ripped easily." 2007 WL 4322167 at *2-3.

18

More fundamentally, Defendants' analogy to *Abner* misunderstands the analysis. They defend the facility's *general policy* rather than the *specific exposure*. While there may be a legitimate penological need for paper boxers as a general matter, the relevant question is whether there was a legitimate need to keep Mr. Turner in the same disintegrating paper boxers that left his genitals exposed for weeks on end. *See Williams v. City of Cleveland*, 771 F.3d 945, 951-52 (6th Cir. 2014) (focusing not on the "blanket policy" but a particular strip search). Defendants have no answer for *that* question.

The final prong examines the relationship between the exposure and the penological need. *Stoudemire*, 705 F.3d at 572. In assessing this prong, courts may consider whether there are "ready alternatives." *Turner*, 482 U.S. at 89-90. Here, there was an acceptable and costless alternative: the provision of Mr. Turner's own cloth boxers. That was what he asked for, what the deputy warden authorized, and what another officer provided minutes after observing the obvious and egregious condition of his boxers. *See supra* p.6. Defendants acknowledge all this, but nonetheless argue that there was a "need for the policy" and that Mr. Turner's "cloth boxers were removed once large sized paper boxers arrived." AB42 n.14. But again, it is not the relationship between the penological need and the policy that matters; the question is whether the penological need justified the specific exposure. And when there are no appropriately-sized paper boxers, adherence to a paper boxer

19

policy is "an exaggerated response" to security concerns. *Abner*, 496 F. Supp. 2d at 813 (cleaned up).[6]

### 2. *Defendants are not entitled to qualified immunity.*

Defendants are not entitled to qualified immunity because both "sufficiently analogous" caselaw, *Rhodes*, 10 F.4th at 679, and "general principles" establish the right to be free from needless genital exposure, *Lee*, 33 F.4th at 863.

**a.** In *Stoudemire*, this Court "identified a well established right" not to be exposed "in full view of . . . others" unless "reasonably related to a legitimate penological interest." 705 F.3d at 575. Mr. Turner's invasive public exposure was similar in three key respects. First, as in *Stoudemire*, the exposure was not "in a private location." *Id*. at 573. Mr. Turner's buttocks and genitals were exposed to other prisoners, his cellmate, and officers. Verified Complaint, R.1, PageID#5-7. Second, just as the *Stoudemire* defendant's "smirk[]" indicated "personal animus" that contributed to the impermissibility of her conduct, 705 F.3d at 573, Defendant Harlan replied "Nice" after seeing Mr. Turner's bare buttocks and Defendant Bare told him his "ass [is] out of luck" after hearing other prisoners heckle him, Verified Complaint, R.1, PageID#6. Third, while the *Stoudemire* defendant had a legitimate

---

[6] Defendants also argue that Mr. Turner's exposure was "accidental" because they did not act with the "intent or plan" to expose him. AB38-39. But a jury could conclude otherwise because the exposure was the inevitable consequence of their conduct. *See* OB35-37.

interest in performing strip searches, she had no such interest for the "'particular search' at issue." 705 F.3d at 573. Likewise, even if the general paper clothing policy serves some penological interest, there is no legitimate interest in forcing Mr. Turner to remain in disintegrating paper boxers or to wear far-too-small paper boxers that immediately ripped at the seams. Thus, *Stoudemire* was sufficiently analogous to clearly establish the law. *Cummings*, 418 F.3d at 687 (prior case need not present "the exact same fact pattern, or even 'fundamentally similar' or 'materially similar' facts").

**b.** *Stoudemire*'s general rule—that conduct exposing a prisoner's genitals to others would be "unreasonable" if "devoid of any penological justification," 705 F.3d at 575—also clearly establishes the law. Other circuits likewise explain that prisoners have a "well established right" not to be subjected to a humiliating exposure "unless" the exposure is related to a "legitimate penological interest." *Farmer v. Perrill*, 288 F.3d 1254, 1260 (10th Cir. 2002); *see also Hutchins v. McDaniels*, 512 F.3d 193, 196 (5th Cir. 2007) (per curiam) (recognizing right to bodily privacy from searches that "go beyond legitimate penological interests"). This rule rightly recognizes people have "a special sense of privacy in their genitals, and involuntary exposure of them . . . may be especially demeaning and humiliating." *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993).

These well-established principles find additional support in prison policy and practice. *Barker*, 649 F.3d at 436. "[E]xceptionally large" prisoners were permitted to "wear their own personal cloth boxers" until the larger sized paper boxers were restocked. Gunter Affidavit, R.32-12, PageID#406. And Defendants Harlan and Long both explained that their practice was to give prisoners "clean, new, size-appropriate paper boxers 3-4 times a week." Harlan Affidavit, R.32-7, PageID#365; Long Affidavit, R.32-6, PageID#361. But instead of offering Mr. Turner "size-appropriate" boxers, they first left him in boxers that were "falling apart" and "destroyed," and then gave him too-small boxers that ripped and showed his "bare buttocks and genitals." Verified Complaint, PageID#5-6; June 29 Boxers Grievance, R.1-1, PageID#16. This is obviously unconstitutional. So obviously unconstitutional, in fact, that a non-defendant officer immediately recognized the problem Defendants had created and brought Mr. Turner his cloth boxers. Verified Complaint, R.1, PageID#6-7.

### III.    Defendant Bare is not entitled to summary judgement on Mr. Turner's deliberate indifference claim.

Defendants "concede" that summary judgment on the deliberate indifference claim would be improper if this Court determines Mr. Turner submitted "admissible evidence" that Defendant Bare labeled him a confidential informant. AB50 n.17. Their only argument on appeal is that Mr. Turner has not done so. That's wrong: his Affidavit, Verified Complaint, and attachments to that Complaint each

22

independently—and certainly together—constitute competent summary judgment evidence of Defendant Bare's comments.

### A. Mr. Turner's Affidavit is based on personal knowledge.

Mr. Turner stated in his Affidavit that Defendant Bare told other prisoners that he was a confidential informant; crucially, he explained that these comments were made "in the presence of Plaintiff." Turner Affidavit, R.33, PageID#445. The district court ignored this statement. *See* Opinion, R.40, PageID#465-74. But because affidavits "made on personal knowledge" are competent summary judgment evidence, Fed. R. Civ. P. 56(c)(4), Mr. Turner offered admissible evidence of Defendant Bare's comments.

Defendants argue otherwise because, in their view, the district court put Mr. Turner on notice that the phrase "in the presence of Plaintiff" was "insufficient to establish personal knowledge" of Defendant Bare's comments and Mr. Turner nevertheless continued to use the "same phrase." AB56. Defendants misconstrue the record.

Here is what actually happened. In his response to Defendants' summary judgment motion, Mr. Turner explained that he personally heard Defendant Bare's comments. First Response, R.26-1, PageID#289. Defendants replied that Mr. Turner's representation could not establish personal knowledge because it was "made in an unsworn pleading." First Reply, R.27, PageID#295. Mr. Turner filed a

23

surreply in which he attempted to retroactively turn his previous filings into sworn documents by explaining that everything he previously said was "true and correct." Surreply, R.28, PageID#300. The surreply did not itself contain any factual statements. *Id.* The district court explained that Mr. Turner's surreply could not establish personal knowledge because it did not set out any facts. Order, R.31, PageID#311-12 n.4. It gave Mr. Turner a second opportunity to respond and explained how Mr. Turner could support such a response with an affidavit. *Id.* Mr. Turner heeded the district court's order and filed a notarized response explaining, with specific factual allegations, that Defendant Bare labeled him an informant "in the presence of Plaintiff." Turner Affidavit, R.33, PageID#445.

In short, Mr. Turner followed the district court's instructions to a tee. Order, R.31, PageID#312 n.4. The district court never said that the statement "in the presence of Plaintiff" was somehow deficient; rather, it specifically identified the surreply as problematic because it did not reference any facts. *Id.* (citing Surreply, R.28; not citing First Response, R.26-1). And it then gave Mr. Turner an opportunity to provide a sworn representation supported by specific facts to oppose summary judgment. *Id.* at PageID#311-12. Mr. Turner did just that. Turner Affidavit, R.33.

Next, Defendants claim that Mr. Turner did not "provide any context surrounding his claim" of personal knowledge, AB54, but that also fails. Defendants rely on an out-of-circuit district court case, *Anderson v. Bristol, Inc.*, 936 F.Supp.2d

24

1039 (S.D. Iowa, 2013), but Mr. Turner did everything that the *Anderson* court faulted the affiant there for not doing. There, the affiant's statement that the plaintiff received a handbook "lack[ed] sufficient support" because the affiant did not "provide any context surrounding the distribution of the handbooks, including the date or location." *Id*. at 1054, n.17. Here, Mr. Turner's Affidavit pointed to the grievance form, which provided both the date (August 3, 2020) and location ("on the walk" on "B-Lower" in the RHU) of Defendant Bare's comments. Turner Affidavit, R.33, PageID#444 (referencing grievances); Grievance Regarding Bare Comments, R.1-1, PageID#22. And unlike in *Anderson*, where it was unreasonable to infer the affiant had personal knowledge of an event that occurred over a thousand miles away, 936 F.Supp.2d at 1054 n.17, Mr. Turner heard Defendant Bare's comments in his own housing unit. Identifying an officer and stating "when, where, or in front of whom" a comment was made is more than enough to demonstrate personal knowledge. *Schroeder v. McDonald*, 55 F.3d 454, n.12 (9th Cir. 1995).

Finally, Defendants argue that because Mr. Turner was often "confined behind a steel door," it was unlikely that he personally heard Defendant Bare's statements. AB57. But Defendants cannot draw inferences in their favor at summary judgment. Mr. Turner's Affidavit pointed to a grievance form explaining the conversation took place "on the walk" on August 3, 2020, Grievance Regarding Bare Comments, R.1-1, PageID#22; that was a weekday when he would have had out-of-

25

cell time. Verified Complaint, R.1, PageID#9. But even if Mr. Turner was confined to his cell, KDOC policy mandates that prisoners assigned to RHU "be provided with . . . [h]ousing that permits some conversation" with others on the unit.[7] A jury could certainly conclude that Mr. Turner heard Defendant Bare's comments.

## B. Mr. Turner's Verified Complaint also supports an inference he heard Defendant Bare's Comments.

Both parties agree that a verified complaint is treated as an affidavit for summary judgment purposes, *see* AB51, and Mr. Turner stated in his Verified Complaint that Defendant Bare "made statements to Michael Carper in front of several inmates that [Mr. Turner] was a confidential informant." R.1, PageID#10. Defendants argue it would be "unreasonable" to infer Mr. Turner was one of those "several inmates" who heard Defendant Bare's comments. AB52. Why? Mr. Turner identified the date and location of the conversation in his attached grievance, and he later expressly clarified that the conversation occurred "in the presence of Plaintiff." Turner Affidavit, R.33, PageID#445. That's enough.

Defendants also assert that Mr. Turner's representation was "conclusory." AB51. Not so. Conclusory statements are "bare legal conclusions" that cannot create genuine disputes of material fact. *Boykin v. Family Dollar Stores of Michigan, LLC*, 3 F.4th 832, 842 (6th Cir. 2021). If Mr. Turner had merely asserted that Defendant

---

[7] KDOC Policies and Procedures 10.2, *supra* n.4, Section II(A)(4)(a).

Bare put him in danger, he could not defeat summary judgment. *See id.* (explaining plaintiff's "bare conclusion" that they were "qualified" for position would be insufficient). In contrast, even a "flat" factual assertion can be "specific enough" to defeat summary judgment. *Id.* at 840-42; *see also Favela v. Collier*, 91 F.4th 1210, 1213-15 (5th Cir. 2024) (holding declaration about grievances sufficient because it didn't "simply declare" that "he had exhausted his remedies," but provided "general substance" and "approximate[]" dates).

Mr. Turner's sworn statements that Defendant Bare spoke "in front of several inmates," on August 3, 2020, on "B-Lower" are not conclusory. Verified Complaint, R.1, PageID#10; Grievance Regarding Bare Comments, R.1-1, PageID#22. Nor are they insufficient to establish personal knowledge: he supplied the "when, where, or in front of whom" the statements were made. *Schroeder*, 55 F.3d at n.12.

\* \* \*

The Affidavit and Verified Complaint each independently create a genuine dispute on the deliberate indifference claim. Considered together, the evidence is even stronger that, on August 3, 2020, Mr. Turner heard Defendant Bare tell other prisoners on the walk in B-Lower that he was an informant. Fed. R. Civ. P. 56(c)(1)(A) (explaining a party may support factual positions with a combination of "materials in the record" including "documents" and "affidavits or declarations"); *American Civil Liberties Union of Ohio Foundation, Inc. v. DeWeese*, 633 F.3d 424,

27

428 (6th Cir. 2011) (explaining evidence should be considered "together"). As Defendants recognize, that is enough to make out "a constitutional claim under the Eight[h] Amendment." AB50 n.17. Defendant Bare is therefore not entitled to summary judgment on Mr. Turner's deliberate indifference claim.

## CONCLUSION

For the foregoing reasons, this Court should reverse and remand.

Dated: March 5, 2023

Respectfully submitted,

*/s/ Megha Ram*
Megha Ram*
RODERICK & SOLANGE MACARTHUR
JUSTICE CENTER
501 H Street NE, Suite 275
Washington DC 20002
(202) 869-3439
megha.ram@macarthurjustice.org

*UCLA School of Law students
Michaela Firmage, Carson Horky,
Shireen Jalali-Yazdi, and Sylvia
Lydon contributed substantially to
the preparation of this brief.

*Counsel for Timothy M. Turner*

28

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and 6 Cir. Rule 32(b) because, according to the word count function of Microsoft Word 2019, this brief contains 6,490 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I certify that this brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) and 6 Cir. Rule 32(b) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Times New Roman font for the main text and 14-point Times New Roman font for footnotes.


Dated: March 5, 2024                                              */s/Megha Ram*
                                                                              Megha Ram

# CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2024, I electronically filed the foregoing brief through the court's electronic filing system, and that it has been served on all counsel of record the court's electronic filing system.

*/s/Megha Ram*
Megha Ram